

MARK D. JOHNSON (SBN 135288)
  *mark.johnson@offitkurman.com*
DEBORAH E. GREAVES (SBN 186454)
  *deborah.greaves@offitkurman.com*
ERIKA P. SANCHEZ (SBN 327603)
  *erika.sanchez@offitkurman.com*
OFFIT KURMAN, P.C.
445 S. Figueroa Street, 18th Floor
Los Angeles, California 90071
Telephone: 213.629.5700 and
Facsimile: 213.624.9441

Attorneys for plaintiff Ground Game LA,
a California nonprofit mutual benefit
corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| GROUND GAME LA, a California nonprofit corporation, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMAND** |
| CERISE CASTLE, an individual; BENJAMIN CAMACHO, an individual; KATJA SCHATTE, an individual; MORGAN KEITH, an individual; KNOCK LA, a California nonprofit corporation, | |
| Defendant. | |

COMPLAINT

Plaintiff Ground Game LA ("GGLA" or "Plaintiff"), by and through its undersigned attorneys, hereby files this Complaint against Cerise Castle, Benjamin Camacho, Katja Schatte, Morgan Keith (the "Individual Defendants"), and the unlawfully organized nonprofit corporation, Knock LA (the "Corporate Defendant." The Individual Defendants and the Corporate Defendant may also be referred to herein collectively as the "Defendants"). GGLA hereby alleges as follows based on knowledge of GGLA's own actions, and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.      GGLA is a non-profit, horizontally-managed, grassroots group, building community and electoral power in Los Angeles. GGLA members are volunteers, staffers, and impacted community members across a broad range of neighborhoods who energize and mobilize residents to get involved in local politics and campaign for social, racial, economic, and environmental justice.

2.      One component of GGLA's mission is to produce media to highlight local issues and to motivate residents to action. Since June 2017, GGLA has operated the journalism and commentary project known as Knock LA through the knock.la and knock-la.com websites and associated social media accounts ("Knock LA").

3.      GGLA brings this lawsuit to stop Defendants' use of GGLA's "KNOCK LA" trademarks as the tradename for Defendant's newly organized non-profit corporation and in Defendants' website domain name (knockla.org), both of which were purposefully created and adopted to confuse GGLA followers both inside and outside of this judicial district, divert traffic from GGLA, and unfairly complete with GGLA. GGLA further brings this lawsuit to (a) obtain the return of GGLA's confidential donor and subscriber mailing list (the "Confidential List") that was stolen and used by Defendants to confuse GGLA's donors and subscribers, to divert donations, and to redirect the donors and subscribers to Defendants' infringing website, as well as to serve as a foundational email list for the Individual Defendants'

new Southlander publication; and (b) to regain access to GGLA's social media accounts that Defendants hijacked and blocked. GGLA further brings this action to obtain monetary damages as a result of Defendants' misappropriation of GGLA's goodwill in its KNOCK LA trademarks and its Confidential List, Defendants' defamatory statements, and intentional interference with GGLA's economic relationships with its donors, subscribers, potential donors, potential subscribers, grantors, potential grantors, and the public, as context dictates ("Consumers").

4.    The Individual Defendants were content contributors to Knock LA with access to GGLA's proprietary information, including the Confidential List. On March 15, 2024, Individual Defendants Castle, Camacho, and Schatte approached GGLA's Board to announce their intent to separate from GGLA and to demand the transfer of assets from GGLA to a new entity formed by Castle, Camacho, and Schatte. On April 7, 2024, GGLA's Board met to consider the demand from Castle, Camacho, and Schatte. GGLA's Board rejected the demand. GGLA's Board further decided that any individuals who interfered with the regular and proper operation of GGLA's Knock LA would be removed from participation and access to Knock LA's systems, including from its email accounts, social media accounts, and internal communication system (Slack).

5.    On April 10, 2024, GGLA informed the Individual Defendants that they had been removed from GGLA's Knock LA email accounts and internal communication system because of their ongoing interference with the operation of GGLA's Knock LA and their stated intent to terminate their involvement with the organization.

6.    Despite lacking any ownership, rights, or license to GGLA's KNOCK LA trademarks, on April 15, 2024, the Individual Defendants incorporated the Corporate Defendant and in doing so, infringed GGLA's trademark rights by naming the Corporate Defendant "Knock LA." A true and correct copy of the Corporate Defendant's Articles of Incorporation is attached hereto as Exhibit A. The Individual

Defendants furthered their scheme to eradicate GGLA's Knock LA by registering the infringing domain name, on April 26, 2024, and on May 16, 2024, filed a federal trademark application for the mark KNOCK LA covering "News agencies, namely, gathering and dissemination of news" in Class 41. True and correct copies of the GoDaddy WHOIS Database demonstrating the registration date of the infringing domain name, and the Defendants' trademark application for KNOCK LA are attached hereto as Exhibit B and Exhibit C, respectively. The trademark application was signed by Morgan Keith, one of the Individual Defendants.

7.      Using the knockla.org domain name, Defendants launched a news and commentary website (the "Infringing Website") using GGLA's KNOCK LA trademarks throughout the website and containing similar content to that of Plaintiff's website (as pictured below). The Individual Defendants also used the Confidential List to disseminate hostile and rhetoric-laced falsities to GGLA's Consumers and potential consumers, claiming that the Individual Defendants own and founded Knock LA. In addition to forming the Corporate Defendant and operating the Infringing Website, GGLA is informed and believes and thereon alleges that the Individual Defendants hijacked and took over GGLA's Knock LA social media accounts, blocking and preventing GGLA from accessing those accounts. The Individual Defendants flagrantly targeted GGLA's Consumers with the intent to confuse them, to redirect them to the Infringing Website while espousing lies for the purpose of intentionally interfering with the economic relationships between GGLA and its Consumers, and to divert those Consumers from GGLA to the Corporate Defendant by capitalizing on the reputation and popularity of GGLA's services and the existing goodwill in GGLA's KNOCK LA trademarks, all the while misrepresenting the Corporate Defendant as the authentic Knock LA.

8.      Using the stolen Confidential List, the Individual Defendants sent emails to Consumers knowingly making numerous false statements about GGLA and Knock LA , as well as to various media and press outlets for the purpose of harming GGLA's

business and reputation, and to induce other Knock LA contributors to discontinue contributing content to GGLA and to request that their existing content on the authentic Knock LA website be taken down.

9.    There is an ongoing need for independent, community focused media and commentary which the residents of Los Angeles, especially those in underserved communities, look to and rely upon to understand and engage with their communities, the greater Los Angeles area, and the United States. Judicial intervention is needed to prevent the Individual Defendants from continuing to make false and defamatory statements to Consumers for the purpose of destroying GGLA and misleading the Knock LA followers into believing that the Infringing Website is authentic and that the Individual Defendants are the founders of Knock LA. GGLA now brings this action for federal trademark infringement in violation of 15 U.S.C. § 1114, federal common law trademark infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), California statutory trademark infringement, California common law trademark infringement, California Unfair Competition Law, misappropriation of trade secrets, intentional interference with prospective economic advantage, defamation, conversion, and conspiracy.

10.    GGLA respectfully requests the Court to permanently enjoin Defendants from using GGLA's KNOCK LA trademarks in their corporate name, website domain name, and their publications however they may be published and/or distributed. GGLA further respectfully requests the Court permanently order Defendants to transfer all domain names owned by Defendants or any of them that use GGLA's KNOCK LA trademark as well as to restore access to all of GGLA's blocked social media accounts. GGLA further respectfully requests that the Court enjoin Defendants from further use of and to return GGLA's Confidential List, and from making defamatory statements about GGLA and Knock LA.

11.    GGLA further respectfully requests monetary damages as a result of Defendants' use of GGLA's KNOCK LA trademarks and Confidential List, and

Defendants' intentional interference with GGLA's economic relationships with its Consumers, along with any other appropriate relief the Court might order.

## THE PARTIES

12.     Plaintiff Ground Game LA is a California nonprofit mutual benefit corporation, with a principal place of business and corporate headquarters located at 1006 1/2 N. Vermont Ave., Los Angeles, CA 90029.

13.     On information and belief, the Corporate Defendant, is a California nonprofit public benefit corporation incorporated in 2024, with a principal place of business and corporate headquarters located at 1401 21st Street #174, Sacramento, CA 95811.

14.     On information and belief, Defendant Cerise Castle is an individual who resides in Los Angeles, California. Upon information and belief, Castle is a citizen of the United States. Upon information and belief, Castle is the Chief Executive Officer of the Corporate Defendant. A true and correct copy of the Corporate Defendant's 2024 Statement of Information is attached hereto as Exhibit D.

15.     On information and belief, Defendant Benjamin Camacho is an individual who resides in Los Angeles, California. Upon information and belief, Camacho is a citizen of the United States. Upon information and belief, Camacho is the Secretary of the Corporate Defendant. *See* Exhibit D.

16.     On information and belief, Defendant Katja Schatte is an individual who resides in Los Angeles, California. Upon information and belief, Schatte is a citizen of the United States. Upon information and belief, Schatte is the Chief Financial Officer of the Corporate Defendant. *See* Exhibit D.

17.     On information and belief, Defendant Morgan Keith is an individual who resides in Los Angeles, California. Upon information and belief, Keith is a citizen of the United States. Upon information and belief, Keith has served as the Interim Executive Director of the Corporate Defendant. *See* Exhibit C.

///

## **JURISDICTION & VENUE**

18.    This Court has original subject matter jurisdiction over the claims in this action arising under the Lanham Act, pursuant to 28 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. §§ 1338(a) and (b).

19.    This Court has original subject matter jurisdiction over the claims for trade secret misappropriation arising under the Defend Trade Secrets Act of 2016, pursuant to 18 U.S.C. § 1836(c).

20.    This Court has supplemental jurisdiction over GGLA's California law claims pursuant to 28 U.S.C. § 1367(a).

21.    This Court has personal jurisdiction over Defendants because Defendants have conspired to commit, and have committed and continue to commit acts of trademark infringement, unfair competition, and trade secret misappropriation and other tortious acts in this judicial district by directing the illegal acts described herein, which give rise to the claims asserted herein. This Court also has personal jurisdiction over Defendants because each of them has substantial, systematic, and continuous contacts within this judicial district.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Venue is also proper in this Court because Defendants are subject to personal jurisdiction in this Court.

## **FACTS**

### **GGLA and GGLA's Knock LA**

23.    Ground Game LA is a 501(c)(4) grass roots organization that was started in 2017 for the purpose of building community and electoral power in Los Angeles. GGLA members are volunteers, staffers, and impacted community members across a broad range of neighborhoods and organizations, who energize and mobilize residents to get involved in local politics and to campaign for social, racial, economic, and environmental justice. GGLA works closely with a wide network of other local

grassroots movements to help solve pressing problems in Los Angeles with wider goals of protecting the interests of residents who are often overlooked.

24. In furtherance of its mission, GGLA produces media to highlight local issues and to motivate people to action. GGLA reports across social media, podcasts and video, and also by supporting independent journalism through its "Knock LA" electronic publication.

25. Volunteers of GGLA initially launched the Knock LA publication in 2017 for the purpose of highlighting and uplifting the work of organizers, advocates, and community members. Because of the poor state of local journalism, GGLA's members, consisting of low income and marginalized residents, were unable to have their stories heard, thus negatively impacting their ability to influence public policy. Through conversations, audio essays, news broadcasts, photo essays, and written articles, Knock LA has been bringing new perspectives to local, national, and global issues. The content produced by Knock LA is widely distributed through multi-media, including numerous podcast platforms, its social media accounts (e.g. knockdotla @instagram; knockdotla@facebook; @knockdotla on YouTube; @knockdotla.bsky.social on Bluesky; @knock_ggla on Twitter); and Knock LA's website at https://knock-la.com (the "Knock LA Domain").

26. Since its creation, Knock LA's website has been publishing content created by passionate journalists, organizers, and advocates, with a view to public service. Knock LA's website first published an article on June 20, 2017 and several others one week later. *See* Exhibits E and F, posts from GGLA's Twitter feed announcing the publication of articles on knock-la.com.

27. Knock LA does not accept money from advertisers, revenue affiliates, retailers, brand sponsorships, or any source that might influence its coverage. Instead, Knock LA is funded by donations from readers with a goal to deliver accurate, reliable, and hyperlocal coverage of critical issues in Los Angeles. Knock LA's two main funding portals are at https://secure.actblue.com/donate/knock.la and

https://knock-la.com/support/.

28.    GGLA and Knock LA are both horizontally organized and do not adhere to hierarchical structures that are typical in other media outlets. Knock LA strives for group consensus before acting on important issues.  Knock LA does not employ any full-time staff members. Writers who have been historically marginalized and excluded from mainstream media, such as impoverished, homeless, minorities, and LGBTQ individuals, are encouraged to submit their articles in the form of op-eds, open letters, calls to actions, or other journalistic pieces.

**GGLA's Confidential List**

29.    Since its inception in 2017, GGLA has expended time and resources developing its valuable confidential and proprietary Confidential List—a mailing list that contains the names and email addresses of subscribers and donors to Knock LA who have shown great interest in the purpose and mission of Knock LA, who knowingly gave their consent to be contacted specifically by Knock LA, and who are inclined to volunteer or donate monetarily to Knock LA.

30.    The Confidential List is maintained by GGLA for purposes of its operation as a 501(c)(4) nonprofit entity.

31.    The Confidential List is not known to the public and is intended to be kept secret. The Confidential List is housed within password-protected software named Klayvio that is only accessible to three or four people within GGLA who have explicit authorization.

32.    The Confidential List is understood by the GGLA Board and staff, and the content contributors to Knock LA, to be secret and confidential, and to constitute a trade secret.

**GGLA's KNOCK LA Trademarks**

33.    Since June 2017, GGLA has been using KNOCK LA as a trademark (both in standard character and stylized formats, referred to herein collectively as the "KNOCK LA Trademarks") in interstate commerce in connection with the

advertising, marketing, promotion, and offering for sale of electronic publishing services and promoting public awareness of politics, elections, and current events— publishing various articles per month, regularly reaching thousands of readers, soliciting countless of donations, and securing over 20,000 followers on Instagram.

34.    Since 2017, GGLA has invested substantial time, money, and resources in developing consumer recognition and goodwill in the KNOCK LA Trademarks.

35.    GGLA registered the Knock LA Domain in 2017 and has owned the Knock LA Domain since 2017.

36.    GGLA owns all rights in and to the KNOCK LA Trademarks, including common law rights based on use in commerce of the KNOCK LA Trademarks. The KNOCK LA Trademarks are valid and subsisting.

37.    GGLA's use of the KNOCK LA Trademarks has been continuous since the first use in connection with GGLA's services in June 2017.

38.    As a result of GGLA's continuous, extensive, and exclusive use of the KNOCK LA Trademarks, consumers associate the KNOCK LA Trademarks uniquely with GGLA and recognize the KNOCK LA Trademarks as identifying GGLA as the source for reliable progressive and community-based journalism and commentary.

39.    To strengthen GGLA's common-law rights in and to its established KNOCK LA Trademarks, GGLA secured a federal trademark registration for KNOCK LA in a stylized format for "Electronic publishing services, namely, publication of text and graphic works of others on the internet featuring information, news and commentary about politics, elections, and current events; Providing information, news, and commentary in the field of current events via the Internet" in Class 41 (U.S. Reg. No. 7669197).

40.    The foregoing registration (the "Federal Registration") is valid, in effect, and registered with the United States Patent and Trademark Office.

41.    GGLA also owns several California trademark registrations for KNOCK LA in standard character format:

(a)    California Reg. No. 02040290 for "Charitable services, namely, promoting public awareness of politics, elections, and current events; Providing information, news, and commentary in the field of politics" in Class 35;

(b)    California Reg. No. 02040291 for "Charitable fundraising services used to fund the dissemination of news, commentary, statistics and other information related to current events and local politics and politicians" in Class 36;

(c)    California Reg. No. 02040293 for "Electronic publishing services, namely, publication of text and graphic works of others on the internet featuring information, news and commentary about politics, elections, and current events; Providing information, news, and commentary in field of current events via the Internet" in Class 41.

42.    Each of the three foregoing California registrations (the "California Registrations") is valid, in effect, and registered with the California Secretary of State.

43.    True and correct copies of GGLA's registration certificates for the aforementioned marks are attached hereto as Exhibits G, H, I, and J respectively.

44.    GGLA also has a pending Section 1(a) use-in-commerce federal trademark application for KNOCK LA in a stylized format for "Charitable services, namely, promoting public awareness of politics, elections, and current events; Providing information, news, and commentary in the field of politics" in Class 35 (U.S. Ser. No. 98515278)

45.    A true and correct copy of the foregoing federal trademark application is attached hereto as Exhibit K.

46.    The KNOCK LA Trademarks are widely known and have developed extensive goodwill. GGLA's services are inextricably connected to the KNOCK LA Trademarks.

47.    The KNOCK LA Trademarks are strong marks that are entitled to a wide scope of protection. Now, more than ever, consumers rely on the KNOCK LA Trademarks as a source of reliable progressive and community-based journalism and

1  commentary on politics, elections, and current events.

2  **Individual Defendants' Roles at GGLA**

3  48.  The Individual Defendants are former contributors to GGLA's Knock

4  LA. The Individual Defendants began their association with GGLA and Knock LA at

5  different times, but the earliest association was with Castle in 2019.

6  49.  The Individual Defendants each began as volunteer contributors, and at

7  the time they announced their intent to separate from GGLA and demanded the

8  transfer of assets from GGLA to a new entity, Castle was serving as the Managing

9  Editor, Camacho as the Photography Editor, and Schatte as the Editor in Chief at

10  Knock LA.

11  50.  Plaintiff is informed and believes and thereon alleges that, in or about

12  April 2024, Castle had access to the login information for Knock LA's social media

13  accounts.

14  51.  In or about April 2024, Castle had access to Klayvio, the password-

15  protected software that housed the Confidential List.

16  **GGLA's Board Denies Individual Defendants' Separation Demand**

17  52.  GGLA is informed and believes and on that basis alleges that, in or about

18  January 2024, the Individual Defendants began conspiring to take control of Knock

19  LA from GGLA and form a new entity utilizing Knock LA's Trademarks,

20  Confidential List, and other GGLA assets.

21  53.  On March 15, 2024, Castle, Camacho, and Schatte approached GGLA's

22  Board regarding a proposed separation from GGLA and demanded the transfer of

23  assets from GGLA to a new entity formed by Castle, Camacho, and Schatte.

24  54.  On April 7, 2024, the Board considered and rejected the demand.

25  55.  After April 7, 2024, the Individual Defendants began interfering with the

26  operation of GGLA's Knock LA.

27  56.  After April 7, 2024, GGLA's Board decided that any individuals who

28  interfere with the regular and proper operation of GGLA's Knock LA would be

Offit | Kurman®
Attorneys At Law

removed from GGLA's Knock LA systems, including from email accounts, social media accounts, and internal communication systems.

57.    On April 10, 2024, GGLA informed the Individual Defendants that they had been removed from Knock LA's email accounts and internal communication system because of their ongoing interference with the operation of Knock LA.

### Defendants' Unlawful Public Campaign Against GGLA

58.    In or about April 2024, GGLA first learned of Defendants' unauthorized use of an identical mark in connection with electronic news and commentary services. Specifically, GGLA learned that Defendants were using the KNOCK LA word mark in the corporate name of Defendants' newly established entity (the Corporate Defendant), a website domain name, and as a publication name (referred to herein, as the context dictates, as the "Infringing Mark") in a blatant attempt to trade off GGLA's established goodwill in the KNOCK LA Trademarks, create confusion amongst Consumers and the public, disrupt the economic relationship between GGLA and its Consumers, and to redirect Consumers to Defendants' infringing news and commentary website.

59.    Due to the Individual Defendants active long-term participation as contributors to GGLA's Knock LA, the Individual Defendants were fully aware of GGLA's Knock LA and the KNOCK LA Trademarks when they engaged in the unauthorized use of the identical Infringing Mark.

60.    Two true and correct images of Defendants' Infringing Website, which used the domain name knockla.org, are pictured below:





61. Defendants' Infringing Website, which offered identical services to those offered by GGLA, made prominent use of the Infringing Mark.

62. In a further attempt to cause confusion and misdirect GGLA Consumers to Defendants' Infringing Website, Defendants copied Plaintiff's "About Us" page onto the Infringing Website and used it as Defendants' "Our Mission" webpage.

63. True and correct images from GGLA's Knock LA website "About Us" page and Defendants' Infringing Website "Our Mission" page are pictured below, respectively:

Offit | Kurman Attorneys At Law





64.     GGLA is informed and believes and thereon alleges that, as part of their public campaign to misrepresent to Consumers that Defendants constituted the authentic Knock LA and to divert donations away from GGLA, Defendants proceeded to hijack and take over GGLA's Knock LA social media accounts and prevented GGLA from accessing and using its Knock LA social media accounts, including by changing the Two-Factor Authentication for Knock LA's Instagram account, removing the administrator email on Knock LA's Facebook account, and taking down multiple YouTube videos from Knock LA's YouTube account without GGLA's authorization or consent.

65.     In or about April 2024, GGLA learned that the Individual Defendants had accessed and taken GGLA's Confidential List without GGLA's permission or consent and sent multiple electronic communications to the individuals on the Confidential List representing themselves as the legitimate successors of Knock LA, portraying themselves as founders of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by Defendants.

66.     GGLA is informed and believes and thereon alleges that the Individual

Defendants copied the Confidential List and have continued to use the Confidential List to advertise, promote, and grow the Corporate Defendant and their individual and personal interests.

67.    In or about April 2024, the Individual Defendants posted several statements on social media platforms fraudulently representing themselves as the legitimate successors of Knock LA, portraying themselves as founders of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by Defendants. A true and correct copy of a sampling of the Individual Defendants' false and defamatory statements is attached hereto as Exhibit L.

68.    In or about April 2024, in a further attempt to unfairly disrupt Knock LA's operations and confuse Knock LA's Consumers and the public, the Individual Defendants took down multiple YouTube videos from Knock LA's YouTube account without GGLA's authorization or consent.

69.    In or about May 2024 and July 2024, GGLA, by and through counsel, sent multiple cease and desist letters to Defendants objecting to Defendants' infringing actions, and demanding that they stop using GGLA's KNOCK LA Trademarks, destroy all copies of the Confidential List, recant their disparaging and deceptive statements made about GGLA and Knock LA, and more.

70.    Despite GGLA's demands, Defendants have continued to engage in the unlawful activity alleged herein.

71.    Defendants are not authorized, and have never been authorized, to use the KNOCK LA Trademarks, or any marks similar thereto, including the Infringing Mark, in advertisements or in connection with the marketing, promotion, or offering for sale of their services.

72.    Defendants are willfully and intentionally infringing on the KNOCK LA

Offit | Kurman®
Attorneys At Law

Trademarks to trade on GGLA's established goodwill, and to deceptively and unfairly market, advertise, and promote their services. Defendants' continued, willful and unauthorized use of the Infringing Mark has and will continue to cause confusion in the marketplace.

73.    Defendants are not authorized, and have never been authorized, to take and use the proprietary information in the Confidential List.

74.    GGLA is informed and believes and thereon alleges that Defendants continue to use GGLA's Confidential List, despite having no authorization to do so.

75.    The Individual Defendants continue to prevent GGLA from accessing and using its Knock LA Instagram account, further disrupting the relationship between GGLA and its Consumers.

76.    The Individual Defendants are willfully and intentionally making false statements about GGLA and Knock LA in order to disrupt the relationship between GGLA and its Consumers, and to divert donations away from Knock LA to the Corporate Defendant.

77.    As a direct and proximate result of Defendants' actions, GGLA has experienced reputational damage and a significant decrease in both articles and donations to Knock LA, all of which have caused substantial harm to GGLA.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement in Violation of 15 U.S.C. §1114)

### (Against All Defendants)

78.    GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 77 as though set forth fully herein.

79.    GGLA is the exclusive owner of each of the KNOCK LA Trademarks.

80.    Each of the KNOCK LA Trademarks is inherently distinctive.

81.    GGLA uses its KNOCK LA Trademarks in connection with marketing, advertising, promotion, and offering for sale of journalist and commentary services,

as listed in the Federal Registration.

82.     GGLA has the exclusive rights to use each of the KNOCK LA Trademarks in the United States for, *inter alia*, marketing, advertising, promotion, and/or offering for sale of journalist and commentary services, as listed in the Federal Registration.

83.     GGLA's exclusive rights in and to each of the KNOCK LA Trademarks predate any rights that Defendants could establish in the Infringing Mark, and in and to any mark that consists of "knock la" in whole and/or in part.

84.     Each of the KNOCK LA Trademarks identifies GGLA as the exclusive source of services offered under the KNOCK LA Trademarks.

85.     Based on the Individual Defendants' previous participation in Knock LA, each was fully aware and had actual notice of KNOCK LA Trademarks and GGLA's superior rights therein when the Defendants began using the Infringing Mark.

86.     Defendants are using the Infringing Mark in commerce—in their corporate name and domain name—to advertise, market, promote, and offer for sale services identical to those offered by GGLA.

87.     Defendants' unauthorized use in commerce of the Infringing Mark is willful, intentional, and intended to trade off of GGLA's goodwill.

88.     Defendants unauthorized use in commerce of the Infringing Mark is likely to deceive Consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause Consumers to believe—contrary to fact—that Defendants' services are sold, authorized, endorsed, or sponsored by GGLA, or that Defendants are in some way affiliated with or sponsored by GGLA.

89.     Defendants unauthorized use in commerce of the Infringing Mark for, and/or in connection with the advertising, marketing, promotion, and/or offering for sale is causing, and is likely to continue cause, Consumer confusion, mistake, and/or deception about whether Defendants' services are affiliated, connected, and/or

associated with GGLA and/or GGLA's services, as listed in the Federal Registration.

90.    GGLA has not consented to the use of its KNOCK LA Trademarks by Defendants.

91.    Defendants adopted and used the Infringing Mark with full knowledge of GGLA's prior rights and in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive goodwill and reputation of the services GGLA offers under its KNOCK LA Trademarks to confuse and deceive Consumers as to the affiliation, connection, or association of Defendants with GGLA.

92.    Defendants' acts and conduct complained of herein constitute actionable infringement in violation of 15 U.S.C. §1114.

93.    Defendants' acts and conduct complained of herein have caused, and will continue to cause, immediate and irreparable harm and injury to GGLA, and to its goodwill and reputation, and will continue to both damage GGLA and confuse Consumers unless enjoined by this Court.

94.    As a direct, substantial, and proximate cause of Defendants' actions, GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court. GGLA is further entitled to injunctive relief to prevent Defendants' continued use of the Infringing Mark.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin and Unfair Competition

### in Violation of 15 U.S.C. §1125(a))

### (Against All Defendants)

95.    GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 94 as though set forth fully herein.

96.    GGLA has the exclusive rights to use each of the KNOCK LA Trademarks in the United States for, *inter alia*, marketing, advertising, promotion, and/or offering for sale of journalist and commentary services.

97.    Defendants used and/or are using the Infringing Mark in commerce—in

Defendants' corporate name, domain name, and publication name—to advertise, market, promote, and offer for sale services identical to those offered by GGLA.

98.    Utilizing the Infringing Mark, the Individual Defendants made public representations about being the legitimate successors of Knock LA, portraying themselves as founders of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by and for the benefit of Defendants.

99.    Defendants unauthorized use the Infringing Mark is likely to deceive Consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe—contrary to fact—that Defendants' services are sold, authorized, endorsed, or sponsored by GGLA, or that Defendants are in some way affiliated with or sponsored by GGLA.

100.    Defendants unauthorized use in commerce of the Infringing Mark constitutes use of a false designation of origin and misleading description and representation of fact.

101.    Defendants adopted and used the Infringing Mark with full knowledge of GGLA's prior rights and in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive goodwill and reputation of the services GGLA offers under its KNOCK LA Trademarks to confuse and deceive Consumers as to the affiliation, connection, or association of Defendants with GGLA.

102.    Defendants' acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. §1125(a).

103.    Defendants' acts and conduct complained of herein have caused, and will continue to cause, immediate and irreparable harm and injury to GGLA, and to its goodwill and reputation, and will continue to both damage GGLA and confuse

Consumers unless enjoined by this Court.

104.    As a direct, substantial, and proximate cause of Defendants' actions, GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court. GGLA is further entitled to injunctive relief to prevent Defendants' continued use of the Infringing Mark.

### THIRD CLAIM FOR RELIEF

### (California Statutory Trademark Infringement in Violation of Cal. Bus. & Prof. Code §14245)

### (Against All Defendants)

105.    GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 104 as though set forth fully herein.

106.    GGLA owns multiple California trademark registrations for the word mark KNOCK LA for various charitable services, charitable fundraising services, and electronic publishing services, as listed in the California Registrations.

107.    GGLA has the exclusive rights to use each of the KNOCK LA Trademarks in California for, *inter alia*, marketing, advertising, promotion, and/or offering for sale of journalist and commentary services, as listed in the California Registrations.

108.    Defendants used and/or are using the Infringing Mark in commerce—in Defendants' corporate name, domain name, and publication name—to advertise, market, promote, and offer for sale services identical to those offered by GGLA.

109.    Utilizing the Infringing Mark, the Individual Defendants made public representations about being the legitimate successors of Knock LA, portraying themselves as founders of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, urging Consumers to subscribe to the Defendants' new publication, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by Defendants and

subscribe to Defendants' publication.

110.    Defendants' unauthorized use of the Infringing Mark in commerce is likely to deceive Consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe—contrary to fact—that Defendants' services are sold, authorized, endorsed, or sponsored by GGLA, or that Defendants are in some way affiliated with or sponsored by GGLA.

111.    Defendants' acts and conduct complained of herein constitute trademark infringement in violation of California Business and Professions Code §14245.

112.    Defendants have committed the acts of infringement complained of herein with full knowledge of GGLA's prior rights in the KNOCK LA Trademarks and with the willful intent to cause confusion and trade on the goodwill of the KNOCK LA Trademarks.

113.    Defendants' acts and conduct complained of herein have caused, and will continue to cause, immediate and irreparable harm and injury to GGLA, and to its goodwill and reputation, and will continue to both damage GGLA and confuse Consumers unless enjoined by this Court.

114.    As a direct, substantial, and proximate cause of Defendants' actions, GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court. GGLA is further entitled to injunctive relief to prevent Defendants' continued use of the Infringing Mark.

### FOURTH CLAIM FOR RELIEF
### (California Common Law Trademark Infringement)
### (Against All Defendants)

115.    GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 114 as though set forth fully herein.

116.    GGLA owns all rights in and to the KNOCK LA Trademarks, including common law rights based on use in commerce in California of the KNOCK LA Trademarks. GGLA's KNOCK LA trademarks are valid and protectible.

117.   GGLA has the exclusive rights to use the KNOCK LA Trademarks in California for, *inter alia*, marketing, advertising, promotion, and/or offering for sale of journalist and commentary services.

118.   Defendants used and/or are using the Infringing Mark in commerce—in Defendants' corporate name, domain name, and publication name—to advertise, market, promote, and offer for sale services identical to those offered by GGLA without authorization by GGLA and in a manner that is likely to cause consumer mistake, confusion, or deception.

119.   Utilizing the Infringing Mark, the Individual Defendants made public representations about being the legitimate successors of Knock LA, portraying themselves as founders of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by Defendants.

120.   Defendants' unauthorized use of the Infringing Mark in commerce is likely to deceive Consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause Consumers to believe—contrary to fact— that Defendants' services are sold, authorized, endorsed, or sponsored by GGLA, or that Defendants are in some way affiliated with or sponsored by GGLA.

121.   Defendants have committed the acts of infringement complained of herein with full knowledge of GGLA's prior rights in the KNOCK LA Trademarks and with the willful intent to cause confusion and trade on the goodwill of the KNOCK LA Trademarks.

122.   Defendants' conduct is causing immediate and irreparable harm and injury to GGLA, and to its goodwill and reputation, and will continue to both damage GGLA and confuse Consumers unless enjoined by this Court.

123.   As a direct, substantial, and proximate cause of Defendants' actions,

GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court. GGLA is further entitled to injunctive relief to prevent Defendants' continued use of the Infringing Mark.

### FIFTH CLAIM FOR RELIEF

### (California Unfair Competition in Violation of

### Cal. Bus. & Prof. Code §§17200 et seq.)

### (Against All Defendants)

124.   GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 123 as though set forth fully herein.

125.   California Business and Professions Code §§ 17200 et seq. prohibits acts of unfair competition, which includes any unlawful, unfair, or fraudulent business act or practice.

126.   Defendants used and/or are using the Infringing Mark in commerce—in Defendants' corporate name, domain name, and publication name—to advertise, market, promote, and offer for sale services identical to those offered by GGLA.

127.   Defendants adopted and used the Infringing Mark with full knowledge of GGLA's prior rights and in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive goodwill and reputation of the services GGLA offers under its KNOCK LA Trademarks to confuse and deceive Consumers as to the affiliation, connection, or association of Defendants with GGLA.

128.   The Individual Defendants have falsely represented to GGLA Consumers that they are the founders and legitimate successors of Knock LA, misrepresenting the reasons for and details of the separation between GGLA and the Individual Defendants, and encouraging donors to discontinue making donations through GGLA's established platform to solicit funds for Knock LA, and to instead send donations to another platform established by Defendants.

129.   Defendants have deceptively and unfairly marketed and advertised their services

130.   Defendants' conduct constitutes unlawful business acts and/or practices under California Business and Professions Code § 17200.

131.   Defendants' conduct constitutes unfair business acts and/or practices under California Business and Professions Code § 17200.

132.   Defendants' conduct constitutes fraudulent business acts and practices under California Business and Professions Code § 17200.

133.   Defendants' acts and conduct complained of herein have caused, and will continue to cause, immediate and irreparable harm and injury to GGLA, and to its goodwill and reputation, and will continue to both damage GGLA and confuse Consumers unless enjoined by this Court.

134.   As a direct, substantial, and proximate cause of Defendants' actions, GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court. GGLA is further entitled to injunctive relief to prevent Defendants' continued use of the Infringing Mark.

## SIXTH CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets Pursuant to the Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq.*)

### (Against All Defendants)

135.   GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 134 as though set forth fully herein.

136.   GGLA created, possessed, and owns its proprietary and Confidential List of donors and subscribers, which constitutes a trade secret. GGLA offers its services in interstate commerce through the donations received from the donors and subscribers in the Confidential List.

137.   The Confidential List is not generally known to the public or people and corporations in the relevant news and commentary industries.

138.   The Confidential List derives independent economic value from not being generally known to the public, as it provides a substantial economic and

COMPLAINT

reputational advantage to GGLA and enables the creation of successful relationships between GGLA and its Consumers and the public.

139.    GGLA took reasonable efforts under the circumstances to protect the secrecy of the Confidential List, including, but not limited to, keeping the Confidential List on password protected software and restricting access to the information to only those who have express permission to use such confidential information.

140.    Defendants misappropriated trade secrets rightfully belonging to GGLA. Defendants are misusing the appropriated Confidential List for their own economic and reputational benefit.

141.    Defendants used improper means to acquire the Confidential List by acquiring the Confidential List through theft from GGLA. Defendants had no express or implied consent from GGLA to so take and use its trade secrets.

142.    As a direct and proximate result of these actions, GGLA has been, and continues to be, damaged in an amount to be proven at trial but which exceeds the jurisdictional minimum of this Court. GGLA is also entitled to recover for any unjust enrichment of Defendants caused by this misappropriation, not taken into account in computing damages for actual loss.

143.    As a result of these actions, GGLA is entitled to an injunctive relief to prevent the continued misappropriation of its Confidential List and wrongful possession of GGLA's confidential and proprietary information by Defendants.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets Pursuant to California Uniform Trade Secrets Act, Cal. Civ. Code §3426 *et seq.*)**

**(Against All Defendants)**

</div>

144.    GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 143 as though set forth fully herein.

145.    GGLA created, possessed, and owns its proprietary and Confidential List, which is a trade secret. GGLA offers its services in interstate commerce through

the donations received from the donors and subscribers in the Confidential List.

146. The Confidential List is not generally known to the public or people and corporations in the relevant news and commentary industries.

147. The Confidential List derives independent economic value from not being generally known to the public, as it provides a substantial economic and reputational advantage to GGLA and enables the creation of successful relationships between GGLA and its Consumers and the public.

148. GGLA took reasonable efforts under the circumstances to protect the secrecy of the Confidential List, including, but not limited to, keeping the Confidential List on password protected software and restricting access to the information to only those who have express permission to use such confidential information.

149. Defendants misappropriated trade secrets rightfully belonging to GGLA. Defendants are misusing the appropriated Confidential List for their own economic and reputational benefit.

150. Defendants used improper means to acquire the Confidential List by acquiring the Confidential List through theft from GGLA. Defendants had no express or implied consent from GGLA to so take and use its trade secrets.

151. As a direct and proximate result of these actions, GGLA has been, and continues to be, damaged in an amount to be proven at trial but which exceeds the jurisdictional minimum of this Court. GGLA is also entitled to recover for any unjust enrichment of Defendants caused by this misappropriation, not taken into account in computing damages for actual loss.

152. As a result of these actions, GGLA is entitled to an injunctive relief to prevent the continued misappropriation of its Confidential List and wrongful possession of GGLA's confidential and proprietary information by Defendants.

///

///

///

## EIGHTH CLAIM FOR RELIEF

### (Defamation)

### (Against Individual Defendants)

153.  GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 152 as though set forth fully herein.

154.  On or about April 2024, Individual Defendants published false and defamatory statements on social media platforms and via emails to Knock LA's Consumers whose names and email addresses were contained in the stolen Confidential List, about the Individual Defendants' past and current roles at GGLA's Knock LA and the reasons for and details of the separation between GGLA and the Individual Defendants. *See* Exhibit L.

155.  The Individual Defendants' statements were false at the time of publication because the Individual Defendants knew that they were not the founders of Knock LA, as Knock LA had existed many years prior to when the Individual Defendants first joined Knock LA; the Individual Defendants were not the legitimate successors to GGLA's Knock LA, as their demand to create a separate entity (which later became the Corporate Defendant) had been rejected by GGLA's Board; and the Individual Defendants were fully aware of the legitimate causes and reasons for their separation from GGLA.

156.  Third parties could reasonably determine that the published statements made by the Individual Defendants were clearly about GGLA because the published statements explicitly referred to GGLA.

157.  As a direct, substantial, and proximate cause of Individual Defendants' actions, GGLA has been damaged in an amount according to proof at trial but which exceeds the jurisdictional minimum of this Court.

158.  Plaintiff is entitled to punitive damages as a result of Individual Defendants' knowingly willful and malicious conduct.

///

**NINTH CLAIM FOR RELIEF**

**(Intentional Interference with Economic Advantage)**

**(Against Individual Defendants)**

159.   GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 158 as though set forth fully herein.

160.   Economic relationships existed between GGLA and its subscribers, and its donors, such that the operations of Knock LA were dependent upon donations to GGLA. These donations were primarily made through recurring monthly monetary contributions from Knock LA's subscribers and donors as well as through content submitted by journalists.

161.   The economic relationships between GGLA and its subscribers and donors, respectively, carried a probability of continuing future economic benefits to GGLA on behalf of Knock LA.

162.   As former contributors to Knock LA, the Individual Defendants had knowledge of the economic relationships between GGLA's Knock LA and its subscribers and donors, potential subscribers and donors, and potential grants and endowments.

163.   The Individual Defendants explicitly used the Confidential List to direct requests to Knock LA's subscribers and donors to withdraw their monetary support for GGLA and subscriptions to Knock LA, and publicly discouraged writers, editors, contributors, and organizations from entering into agreements with Knock LA.

164.   The Individual Defendants intentionally represented themselves as the founders and legitimate successors of Knock LA and misrepresented the reasons for their separation from GGLA in order to interfere with GGLA's economic relationships with its Consumers and the public, and potential subscribers and donors. The Individual Defendants knew that interference with the aforementioned relationships was certain or substantially certain to occur as a result of Defendants' wrongful conduct, which included Individual Defendants' false statements published

1   on social media and via email using the stolen Confidential List.

2       165.   Actual interference with the relationships between GGLA and its Knock

3   LA Consumers following dissemination of the Individual Defendant's falsehoods and

4   misrepresentations resulted in a significant decrease in monthly donations to Knock

5   LA.

6       166.   As a direct, substantial, and proximate cause of the Individual

7   Defendants' actions, GGLA has been damaged in an amount according to proof at

8   trial but which exceeds the jurisdictional minimum of this Court.

9       167.   Plaintiff is entitled to punitive damages as a result of the Individual

10  Defendants' knowingly willful and malicious conduct.

11  **TENTH CLAIM FOR RELIEF**

12  **(Conversion)**

13  **(Against All Defendants)**

14      168.   GGLA repeats and incorporates by reference the allegations contained

15  in Paragraphs 1 through 167 as though set forth fully herein.

16      169.   GGLA owns the Confidential List.

17      170.   Defendants have intentionally and wrongfully stolen and retained

18  possession of GGLA's Confidential List.

19      171.   Despite GGLA's multiple demands for the return of the Confidential

20  List, Defendants have refused to the return the Confidential List or provide any lawful

21  justification for withholding it.

22      172.   Defendants' wrongful retention and continued use of the Confidential

23  List constitutes an intentional act of conversion, depriving Plaintiff of its rightful

24  property.

25      173.   As a direct and proximate result of Defendants' conversion, GGLA has

26  been damaged in an amount according to proof at trial, but which exceeds the

27  jurisdictional minimum of this Court.

28  ///

Offit|Kurman®
Attorneys At Law

## ELEVENTH CLAIM FOR RELIEF

### (Conspiracy)

### (Against Individual Defendants)

174.   GGLA repeats and incorporates by reference the allegations contained in Paragraphs 1 through 173 as though set forth fully herein.

175.   On information and belief, in or about March 2024, the Individual Defendants, while still working as content contributors for GGLA's Knock LA in leadership positions, acting in concert, came to a mutual understanding to take and use GGLA's intellectual property, including trademarks and trade secrets, without authorization, to create a separate entity with the same trademark and tradename and providing identical services and to misappropriate the Confidential List.

176.   In or about March 15, 2024, Castle, Camacho, and Schatte approached GGLA's Board announcing their intent to separate from GGLA and demanding the transfer of assets from GGLA to their new entity.

177.   After GGLA's Board rejected their demand, the Individual Defendants had knowledge of, agreed to, and created a common plan, with the established objective and course of action of incorporating the Corporate Defendant, infringing GGLA's trademark rights, stealing and using the Confidential List to contact GGLA's Consumers, intentionally interfering with the prospective economic relationships between GGLA and its Consumers, and defaming GGLA—furthering their scheme to unfairly compete and eradicate Knock LA.

178.   The wrongful acts of the Individual Defendants resulted in injury to GGLA.

179.   As a direct and proximate result of Individual Defendants' civil conspiracy, GGLA has been damaged in an amount according to proof at trial, but which exceeds the jurisdictional minimum of this Court.

///

///

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgement against Defendants as follows:

1.    For an award of compensatory damages in an amount to be determined according to proof at trial;

2.    For an award of punitive damages in an amount to be determined according to proof at trial;

3.    For injunctive relief prohibiting Defendants from using the Infringing Mark and the KNOCK LA Trademarks;

4.    For injunctive relief ordering Defendants to restore access to all of GGLA's blocked social media accounts;

5.    For injunctive relief requiring Defendants to cease using and return the Confidential List to GGLA;

6.    For an award of reasonable attorneys' fees, expenses, and costs incurred herein.

For such other and further relief that the Court deems just and equitable.

DATED: April 30, 2025              OFFIT KURMAN, P.C.


By:    /s/ *Mark D. Johnson*
_____
MARK D. JOHNSON
DEBORAH E. GREAVES
ERIKA P. SANCHEZ
Attorneys for plaintiff Ground Game LA, a
California nonprofit mutual benefit
corporation

# EXHIBIT A





For Office Use Only

**-FILED-**

File No.: 6188802

Date Filed: 4/15/2024

## ARTICLES OF INCORPORATION
### OF
### KNOCK LA

### ARTICLE I

The name of this corporation is Knock LA.

### ARTICLE II

A. This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for charitable purposes.

B. The specific and primary purpose of this corporation is to engage in charitable and educational activities within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provisions of any future United States internal revenue law (the "Code").

### ARTICLE III

The name and address in this state of this corporation's initial agent for the service of process is Cerise Castle, 1401 21st Street # 174, Sacramento, CA 95811.

### ARTICLE IV

The initial street and mailing address of the corporation is 1401 21st Street # 174, Sacramento, CA 95811.

### ARTICLE V

A. This corporation is organized and operated exclusively for exempt purposes within the meaning of Section 501(c)(3) of the Code. Notwithstanding any other provision of these Articles, this corporation shall not carry on any activities not permitted to be carried on (1) by a corporation exempt from federal income tax under Section 501(c)(3) of the Code, or (2) by a corporation, contributions to which are deductible under Sections 170(c)(2), 2055(a)(2), 2106(a)(2)(A)(ii), 2522(a)(2), or 2522(b)(2) of the Code.

B. Except as permitted by law, no substantial part of the activities of this corporation shall consist of the carrying on of propaganda or otherwise attempting to influence legislation, nor shall this corporation participate in, or intervene in (including the publication or distribution of statements), any political campaign on behalf of or in opposition to any candidate for public office.

B2603-8363 04/15/2024 3:52 PM Received by California Secretary of State

## ARTICLE VI

The property of this corporation is irrevocably dedicated to charitable purposes, and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer, or member, if any, of this corporation, or any other private person. Upon the winding up and dissolution of this corporation and after paying or adequately providing for the debts and obligations of this corporation, the remaining assets shall be distributed to a nonprofit fund, foundation, or corporation which is organized and operated exclusively for charitable purposes and that has established its tax-exempt status under Section 501(c)(3) of the Code.

DATED: 4/15/24

Karl Mill, Incorporator

B2603-8364 04/15/2024 3:52 PM Received by California Secretary of State

# **EXHIBIT B**



  

# Search the WHOIS Database

| knockla.org | Search |
|---|---|

⊘ **knockla.org is taken**

We still might be able to get it for you. <u>See How</u>

Broker Service Fee ⑦

**$99.99**



Add to Cart

## WHOIS search results

### Domain Information                                              ⌃

| | |
|---|---|
| Name | knockla.org |
| Registry Domain ID | da684629f5c04ea7bae87fc08cadfdd8-LROR |
| Registered On | 2024-04-26T01:53:18.421Z |
| Expires On | 2025-04-26T01:53:18.421Z |
| Updated On | 2024-05-01T01:53:33.906Z |
| Domain Status | client transfer prohibited |
| Name Servers | gemma.ns.cloudflare.com |
| | viddy.ns.cloudflare.com |

### Registrant Contact                                              ⌃

| | |
|---|---|
| Name | Redacted For Privacy |

| Organization | - |
|---|---|
| Phone | tel:+1-7208009072 |
| Fax | - |
| Email | https://www.name.com/contact-domain-whois/knockla.org |
| Mailing Address | PO Box 1769, Denver, CO, 80201 |

## Technical Contact ⌃

| Name | Redacted For Privacy |
|---|---|
| Organization | - |
| Phone | tel:+1-7208009072 |
| Fax | - |
| Email | https://www.name.com/contact-domain-whois/knockla.org |
| Mailing Address | PO Box 1769, Denver, CO, 80201 |

## Registrar Information ⌃

| Name | Name.com, Inc |
|---|---|
| IANA ID | 625 |
| Abuse Contact Email | abuse@name.com |
| Abuse Contact Phone | tel:+1-720-310-1849 |

## DNSSEC Information  ⌃

Delegation Signed          Unsigned

**Notice and Remarks**

**Terms of Service**

Public Interest Registry provides this RDAP service for informational purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Public Interest Registry does not guarantee its accuracy. Users accessing the Public Interest Registry RDAP service agree to use the data only for lawful purposes, and under no circumstances may this data be used to: a) allow, enable, or otherwise support the transmission by e-mail, telephone, or facsimile of mass unsolicited, commercial advertising or solicitations to entities other than the registrar's own existing customers and b) enable high volume, automated, electronic processes that send queries or data to the systems of Public Interest Registry or any ICANN-accredited registrar, except as reasonably necessary to register domain names or modify existing registrations. When using the Public Interest Registry RDAP service, please consider the following: the RDAP service is not a replacement for standard EPP commands to the SRS service. RDAP is not considered authoritative for registered domain objects. The RDAP service may be scheduled for downtime during production or OT&E maintenance periods. Queries to the RDAP services are throttled. If too many queries are received from a single IP address within a specified time, the service will begin to reject further queries for a period of time to prevent disruption of RDAP service access. Abuse of the RDAP system through data mining is mitigated by detecting and limiting bulk query access from single sources. Where applicable, the presence of a [Non-Public Data] tag indicates that such data is not made publicly available due to applicable data privacy laws or requirements. Should you wish to contact the registrant, please refer to the RDAP records available through the registrar URL listed above. Access to non-public data may be provided, upon request, where it can be reasonably confirmed that the requester holds a specific legitimate interest and a proper legal basis for accessing the withheld data. Access to this data can be requested by submitting a request to WHOISrequest@pir.org. Public Interest Registry Inc. reserves the right to modify these terms at any time. By submitting this query, you agree to abide by this policy.
https://thenew.org/org-people/about-pir/policies/

**Status Codes**
For more information on domain status codes, please visit https://icann.org/epp
https://icann.org/epp



**RDDS Inaccuracy Complaint Form**

URL of the ICANN RDDS Inaccuracy Complaint Form: https://icann.org/wicf

https://icann.org/wicf

| **Raw RDAP Registry Data** | ⌄ |
|---|---|

| **Raw RDAP Registrar Data** | ⌄ |
|---|---|

## Find your Domain

Find your perfect domain

 # Take a look at these alternate options



### knockla.net

$0.01 ~~$24.99~~

1st yr only with 3 yr term ⓘ

### knock.la

$49.99/yr

### knockla.info

$0.01 ~~$37.99~~

1st yr only with 2 yr term ⓘ

### knockla.co

**$0.01** ~~$51.99~~

1st yr only with 3 yr term ⓘ



---

**PREMIUM** ⓘ

# knock.org

**$9,999.00** +$22.99/yr ⓘ



We love taking your call.

 

Empower your journey with curated content from

## GoDaddy Resources

---

## About GoDaddy

About Us

Newsroom

Investor Relations

Careers

Corporate Responsibility

Trust Center

Legal

## Help Center

Help Center

Community

Venture Forward: Microbusiness Data

GoDaddy Blog

Contact Us

Report Abuse


## Resources

Webmail

WHOIS

GoDaddy Mobile App

ICANN Confirmation

Designers & Developers

Corporate Domains

Redeem Code

Product Catalog

Videos

Business Name Generator


## Partner Programs

Affiliates

Reseller Programs

GoDaddy Pro

Commerce For Partners


## Account

My Products

Renewals & Billing

Create Account

Shopping

Buy a Domain

Websites

WordPress

Hosting

Web Security

Business Email

Phone Numbers

---

United States – English ⌄    USD ⌄

Legal    Privacy Policy    Advertising Preferences    Cookies

Do not sell my personal information

Copyright © 1999 - 2025 GoDaddy Operating Company, LLC. All Rights Reserved.

Use of this Site is subject to express terms of use. By using this site, you signify that you agree to be bound by these Universal Terms of Service.

# **EXHIBIT C**

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98553248**
**Filing Date: 05/16/2024**

*NOTE: Data fields with the* **\*** *are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

---

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| *MARK | Knock LA |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | Knock LA |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Knock LA Newsroom |
| DBA/AKA/TA/FORMERLY | AKA Knock LA |
| *MAILING ADDRESS | 1401 21st Street #174 |
| *CITY | Sacramento |
| *STATE (Required for U.S. applicants) | California |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 95811 |
| PHONE | 213-241-9667 |
| *EMAIL ADDRESS | XXXX |
| WEBSITE ADDRESS | https://www.knockla.org/ |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | ASSOCIATION (INCORPORATED) |
| * STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY UNDER WHICH ORGANIZED | California |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |

| *INTERNATIONAL CLASS | 041 |
|---|---|
| *IDENTIFICATION | News agencies, namely, gathering and dissemination of news |
| *FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 01/01/2019 |
| FIRST USE IN COMMERCE DATE | At least as early as 01/01/2019 |
| SPECIMEN FILE NAME(S) | |
| ORIGINAL PDF FILE | SPE0-26038001a3029725c419 8e6602c21b5-2024051600231 7180311_._Knock_LA_with_s ubscribe_button_1.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\985\532\98553248\xml1\ FTK0003.JPG |
| ORIGINAL PDF FILE | SPE0-26038001a3029725c419 8e6602c21b5-2024051600231 7180311_._Knock_LA_with_s ubscribe_button_2.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\985\532\98553248\xml1\ FTK0004.JPG |
| SPECIMEN DESCRIPTION | Knock LA's webpage features the specimen that a trademark is being sought for. The subscribe button is pictured next to "Knock LA" on its newsroom web page. |
| WEBPAGE URL | knockla.org |
| WEBPAGE DATE OF ACCESS | 05/15/2024 |
| ADDITIONAL STATEMENTS SECTION | |
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |
| SECTION 2(f) Claim of Acquired Distinctiveness, IN PART, BASED ON EVIDENCE | Knock LA has become distinctive of the goods/services, as demonstrated by the attached evidence. |
| 2(f) EVIDENCE FILE NAME(S) | |
| ORIGINAL PDF FILE | epart-26038001a3029725c41 98e6602c21b5-002317180_._ Knock_LA_website_home_pag e.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\985\532\98553248\xml1\ FTK0005.JPG |
| ORIGINAL PDF FILE | epart-26038001a3029725c41 98e6602c21b5-002317180_._ Knock_LA_website_and_miss ion_statement.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\985\532\98553248\xml1\ FTK0006.JPG |
| ORIGINAL PDF FILE | epart-26038001a3029725c41 98e6602c21b5-002317180_._ Knock_LA_journalism_award s.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\985\532\98553248\xml1\ FTK0007.JPG |

| CORRESPONDENCE INFORMATION | |
|---|---|
| NAME | Knock LA Newsroom |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | freeknockla@gmail.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | morganekeith@gmail.com; cerisecastle@gmail.com; bencamachophotography@gmail.com |
| FEE INFORMATION | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 250 |
| *TOTAL FEES DUE | 250 |
| *TOTAL FEES PAID | 250 |
| SIGNATURE INFORMATION | |
| * SIGNATURE | /morgan keith/ |
| * SIGNATORY'S NAME | Morgan Keith |
| * SIGNATORY'S POSITION | Interim Executive Director |
| SIGNATORY'S PHONE NUMBER | 402-661-0941 |
| * DATE SIGNED | 05/15/2024 |
| SIGNATURE METHOD | Signed directly within the form |

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98553248**
**Filing Date: 05/16/2024**

## To the Commissioner for Trademarks:

**MARK:** Knock LA (Standard Characters, see mark)
The literal element of the mark consists of Knock LA. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Knock LA Newsroom, AKA Knock LA, an association (incorporated) organized under the laws of California, having an address of

    1401 21st Street #174
    Sacramento, California 95811
    United States
    213-241-9667(phone)
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 041:  News agencies, namely, gathering and dissemination of news

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 041, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 01/01/2019, and first used in commerce at least as early as 01/01/2019, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Knock LA's webpage features the specimen that a trademark is being sought for. The subscribe button is pictured next to "Knock LA" on its newsroom web page..

**Original PDF file:**
SPE0-26038001a3029725c419 8e6602c21b5-2024051600231 7180311_._Knock_LA_with_s ubscribe_button_1.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
**Original PDF file:**
SPE0-26038001a3029725c419 8e6602c21b5-2024051600231 7180311_._Knock_LA_with_s ubscribe_button_2.pdf
**Converted PDF file(s)** (1 page)
Specimen File1

Webpage URL: knockla.org
Webpage Date of Access: 05/15/2024

## SECTION 2(f) Claim of Acquired Distinctiveness, IN PART, BASED ON EVIDENCE
Knock LA has become distinctive of the goods/services, as demonstrated by the attached evidence.
  The applicant submits the following evidence to support the §2(f), in part, claim:

**Original PDF file:**
epart-26038001a3029725c41 98e6602c21b5-002317180_._Knock_LA_website_home_pag e.pdf

**Converted PDF file(s)** (1 page)

[2(f) evidence-1](#)

**Original PDF file:**

[epart-26038001a3029725c41 98e6602c21b5-002317180_._ Knock_LA_website_and_miss ion_statement.pdf](#)

**Converted PDF file(s)** (1 page)

[2(f) evidence-1](#)

**Original PDF file:**

[epart-26038001a3029725c41 98e6602c21b5-002317180_._ Knock_LA_journalism_award s.pdf](#)

**Converted PDF file(s)** (1 page)

[2(f) evidence-1](#)

For informational purposes only, applicant's website address is: https://www.knockla.org/

The applicant's current Correspondence Information:

Knock LA Newsroom

PRIMARY EMAIL FOR CORRESPONDENCE: freeknockla@gmail.com

SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): morganekeith@gmail.com; cerisecastle@gmail.com; bencamachophotography@gmail.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

A fee payment in the amount of $250 has been submitted with the application, representing payment for 1 class(es).

<div align="center">

**Declaration**

</div>

☑ **Basis:**

**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**

**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /morgan keith/    Date: 05/15/2024

Signatory's Name: Morgan Keith

Signatory's Position: Interim Executive Director

Signatory's Phone Number: 402-661-0941

<div align="center">

COMPLAINT

</div>

Signature method: Signed directly within the form
Payment Sale Number: 98553248
Payment Accounting Date: 05/16/2024

Serial Number: 98553248
Internet Transmission Date: Thu May 16 01:13:01 ET 2024
TEAS Stamp: USPTO/FTK-XXXX:XXXX:XXXX:XXXX:XXXX:XXX:X
XXX:XXXX-20240516011302447212-98553248-8
70fbb33bc7998e1c116eb81bf964bca6ede2cdf9
aa36dca973e8aa4fb11a51d1b-CC-13017013-20
240516002317180311

# Knock LA



COMPLAINT



etter  •  Sign up for our newsletter to keep up with updates  •  Welcome to Knock

# Subscribe

Support local journalism by subscribing!

Your name

Your email address

Subscribe







POSTED FEBRUARY 28, 2023 BY DAVID ERTISCHEK / NEWS & STORIES

# Castle '15 Wins American Mosaic Journalism Prize for Exposing LA Sheriff's Gangs



Cerise Castle '15 talks about being a crime fighting journalist in Los Angeles on *The Breakfast Club* radio show.

Journalist Cerise Castle '15 was awarded the American Mosaic Journalism Prize for her 15-part series uncovering deputy gangs operating inside the Los Angeles County Sheriff's Department.

The Heising-Simons Foundation gives the annual prize for excellence in long-form journalism about underrepresented groups in the country. The Prize comes with $100,000.

"Cerise Castle's investigative journalism tenaciously unmasks extremism in our institutions. This includes a series of reports revealing a history of deputy gangs in Los Angeles County Sheriff's Department, which has led to legal action. This is high-stakes and revelatory work, reported with grit and bravery," said the judges about Castle's work.

Castle's series exposed 18 gangs, 19 documented murders (all of whom were of people of color), and more than $100 million dollars in lawsuits paid for by the people of Los Angeles, said the Heising-Simons Foundation. Castle's article first appeared in Knock LA, a nonprofit community journalism project, and she continued to do reporting on the topic late in 2021 and in 2022.

In 2022, Castle's received the International Women's Media Foundation's Courage in Journalism Award. The story received the American Journalism Online Award for best use of public records, reported the Associated Press.



Cerise Castle '15

COMPLAINT

# **EXHIBIT D**

BA20240880352

B2703-9114 05/01/2024 2:19 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CA NONPROFIT CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20240880352 |
| Date Filed: 5/1/2024 |

---

**Entity Details**

| | |
| --- | --- |
| Corporation Name | KNOCK LA |
| Entity No. | 6188802 |
| Formed In | CALIFORNIA |

**Street Address of California Principal Office of Corporation**

| | |
| --- | --- |
| Street Address of California Office | 1401 21ST STREET #174 SACRAMENTO, CA 95811 |

**Mailing Address of Corporation**

| | |
| --- | --- |
| Mailing Address | 1401 21ST STREET #174 SACRAMENTO, CA 95811 |
| Attention | |

**Officers**

| Officer Name | Officer Address | Position(s) |
| --- | --- | --- |
| CERISE CASTLE | 1401 21ST STREET #174 SACRAMENTO, CA 95811 | Chief Executive Officer |
| BEN CAMACHO | 1401 21ST STREET #174 SACRAMENTO, CA 95811 | Secretary |
| KATJA SCHATTE | 1401 21ST STREET #174 SACRAMENTO, CA 95811 | Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
| --- | --- | --- | --- |
| None Entered | | | |

**Agent for Service of Process**

| | |
| --- | --- |
| Agent Name | CERISE CASTLE |
| Agent Address | 1401 21ST STREET #174 SACRAMENTO, CA 95811 |

**Email Notifications**

| | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Electronic Signature**

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*JUDY CULVER*
_____
Signature

05/01/2024
_____
Date

COMPLAINT

# **<u>EXHIBIT E</u>**

 twitter.com/KnockDotLA/status/877278702836502528

← **Post**

 **Knock LA**
@KnockDotLA                                                                    · · ·

We're live! Welcome to KNOCK, real alternative journalism from your
friends at @GroundGameLA

2:35 PM · Jun 20, 2017

# **EXHIBIT F**

twitter.com/GroundGameLA/status/890627031888609280

← **Post**

 **Ground Game LA**
@GroundGameLA

New articles on @knock_ggla from @twinning_3 @acekatana
@samhellohi @PerryPlanet

Head over to knock-la.com and check it out!

10:36 AM · Jul 27, 2017

# **EXHIBIT G**

# United States of America
## United States Patent and Trademark Office



**Reg. No. 7,669,197**

**Registered Jan. 28, 2025**

**Int. Cl.: 41**

**Service Mark**

**Principal Register**

Ground Game LA  (California CORPORATION)
1006 1/2 N. Vermont Ave.
Los Angeles, CALIFORNIA 90029

CLASS 41: Electronic publishing services, namely, publication of text and graphic works of others on the internet featuring information, news and commentary about politics, elections, and current events; Providing information, news, and commentary in the field of current events via the Internet

FIRST USE 6-20-2017; IN COMMERCE 6-20-2017

The mark consists of the image of the palm side of a fist surrounded by an arch that starts on one side of the fist and ends on the other side. Next to the image is the stylized composite word "KNOCKLA" in all capital letters with the word "KNOCK" having a font size that is approximately double the font size of "LA".

SER. NO. 98-515,334, FILED 04-23-2024



Acting Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# **<u>EXHIBIT H</u>**



**California Secretary of State**
Electronic Filing

## Trademark/Service Mark - Application for Registration

| | |
|---|---|
| Type of Mark: | Service Mark |
| Name of Owner (Registrant): | Ground Game LA |

| | |
|---|---|
| Registration Number: | 02040290 |
| Classification Code(s): | 35 |
| File Date: | 07/12/2024 |

**Detailed Filing Information**

1. Application for Registration of:      Service Mark

2. Owner (Registrant) Information:
   a. Name of Owner (Registrant):      Ground Game LA

   b. Business Address:      1006 1/2 N. Vermont Ave., Los Angeles, California, 90029, US

   c. Declaration of Ownership:
   Registrant declares that the Registrant is the owner of the mark, that the mark is in use, and that to the Registrant's knowledge, no other person has registered the mark in this state, or has the right to use the mark, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion, to cause mistake, or to deceive.

   d. Business Structure:      Corporation
   California

   e. Name of General Partner(s):      None

3. Description of Mark:
   KNOCK LA

See drawing page attached and incorporated by reference.

FILED
Secretary of State
State of California

# California Secretary of State
## Electronic Filing

4.  Design Code(s):

5.  Disclaimer:
    LA "The Mark consists of standard characters without claim to any particular font style, size, or color."

6.  Date of First Use of Mark

    a.  Date Mark was First Used Anywhere:    06/20/2017

    b.  Date Mark was First Used in California:    06/20/2017

7.  Identification of Goods or Products/Services:

    a.  List specific Goods or Products/Services:
        Charitable services, namely, promoting public awareness of politics, elections, and current events; Providing information, news, and commentary in the field of politics.

    b.  Classification Code(s):    35

8.  U.S. Patent and Trademark Information

    a.  File Date:

    b.  Serial/File Number:

    c.  Status of Application:

    d.  If Refused, Why?:

9.  How is the Mark Used:

    On Letterhead, Advertisement/Branding On Webpage

10. Type of Specimen:

    Website

    See Specimen attached and incorporated by reference.

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.

COMPLAINT

# California Secretary of State
## Electronic Filing

11. Authorized Representative:                    Yes

**Declaration of Accuracy and Signature**

I declare that all the foregoing information contained in this Application is accurate, true and correct and that I am authorized to sign this Application. I understand that if I willfully state in the Application any material fact that I know to be false, I will be subject to a civil penalty of not more than ten thousand dollars ($10,000.00).

Registrant or Authorized Representative:    Deborah E. Greaves

Date Electronically Signed:                  07/12/2024

*The remainder of this page is intentionally left blank.*



News   Analysis   Opinion   Culture   Incarceration Reporting   Photo Essays

  

TRENDING   INCARCERATION REPORTING INITIATIVE   SANTA ANA   CULTURE

      

| **NEWS** | SANTA ANA   SANTA ANA POLICE OFFICERS ASSOCIATION   VALERIE AMEZCUA |

# Newly Released Documents Show Santa Ana Police Union's Grip on Santa Ana Mayor

City records allege Mayor Amezcua ousted two top officials as a favor for cops and violated state open meeting law.

Ben Camacho | March 29, 2024

    



*Santa Ana Mayor Valerie Amezcua sitting at the dais. January 16, 2024. (Photo: Ben Camacho | Knock LA)*

In what appears to be a political favor to the Santa Ana Police Officers Association (SAPOA), Santa Ana Mayor Valerie Amezcua played a pivotal role in the removal of then-City Manager Kristine Ridge and then-Chief David Valentin, as revealed by public records acquired by *Knock LA*.

The role of the police labor union and Mayor Amezcua in the ouster of Ridge and Valentin was revealed in a legal claim submitted to the city by Ridge. In that claim, Ridge alleged that she experienced "discrimination, harassment, retaliation and [pressure] to take illegal action."

Meanwhile, Councilmember Johnathan Hernandez submitted an ethics complaint on August 1, 2023, to the city attorney alleging that Amezcua violated the state's Brown Act in carrying out the strategy to "fire the City Manager and [Police] Chief [David] Valentin." This complaint is still pending.

COMPLAINT

Ridge's claim, dated September 22, 2023, threatened legal action against the city and sparked settlement discussions. This ultimately resulted in her resignation and the city council's vote to pay her a settlement of over $600,000 to settle her legal claim. Attempts by the city to conceal the reasons behind the substantial payout to Ridge were highlighted when it repeatedly declined to release her claim in response to numerous public records requests made by *Knock LA* over nearly six months.

Ultimately, the city council discussed *Knock LA's* Public Records Act request for the disclosure of Ridge's legal claim in a closed session on March 5, after *Knock LA* emailed relevant case law to the city attorney, showing the document was indeed a public record. The city released the record on March 11.

Via email, city spokesperson Paul Eakins stated that the "matter was placed on the closed session agenda due to significant exposure to litigation…" and that "…questions arose about the confidentiality of the document. Staff needed time to evaluate the issues and obtain legal advice before releasing the document."

Hernandez's ethics complaint, shared with *Knock LA*, alleged that Amezcua "was adamant about firing the Chief and demonstrated knowledge and an understanding that in order to fire the Chief she has to fire the City Manager (CM), Kristine Ridge."

Hernandez alleged Amezcua stated that the "[SAPOA] is not lobbying her or forcing her to attempt [the strategy]…"

This strategy is what the SAPOA allegedly asked for in 2016 when then-Chief Carlos Rojas was ousted by former SAPOA-funded elected officials. In a 2016 lawsuit, Rojas alleged that city officials backed by the SAPOA conspired to oust him as police chief by first firing then-city manager David Cavazos. The strategy was allegedly orchestrated by the SAPOA, former Mayor Miguel Pulido, and former councilmembers Jose Solorio and Juan Villegas.

COMPLAINT

Rojas' lawsuit states "Serrano and the POA spent approximately $300,000.00–$400,000.00 in the 2016 elections to support candidates who agreed in advance that, if elected, they would vote to remove [Cavazos, Rojas and City Attorney Sonia Carvalho]".

The strategy ushered in by Amezcua is a repeat of history by one of the city's largest political players.

.      .      .

While the press release attached to the severance and release agreement between the city and Ridge includes amicable language from Amezcua and Ridge, the claim, which initiated the settlement talks, tells a different story.

Ridge alleged that she "endured repeated pressure from specific elected officials contrary to State law to take care of Police Union President, Gerry Serrano's, pension" and had "been repeatedly directed to provide Mr. Serrano with a higher paying salaried position without regard to civil service provisions nor qualifications."

According to Ridge's claim, Amezcua threatened Ridge's job after Ridge told the mayor that placing a certain item on the city council agenda would violate the Brown Act — the state's opening meeting law.  Because the City redacted the agenda item from Ridge's claim letter when it released the letter to *Knock LA*, it is unclear how the placement of the item on the agenda would have violated the Brown Act. Ridge's claim letter also alleges that during the city's contract negotiations with the police union, Amezcua "prohibited Ms. Ridge from speaking or answering questions…" related to those negotiations.

The mayor's alleged gag order directed at Ridge denied the city's top officer the ability to provide input on contract negotiations between the city and the police union, the latter of which is Amezcua's largest donor.

Amezcua received almost $218,000 from the SAPOA in support of her 2022 mayoral campaign. She endorsed the SAPOA's failed recall attempt of council member Jessie Lopez. She has also publicly announced that she is "proud" to have the support of the SAPOA.



*A flyer advocating for the recall of Councilmember Jessie Lopez, endorsed by Mayor Amezcua. (Photo: Ben Camacho | Knock LA)*

According to Hernandez's complaint, he met with Amezcua on December 15, 2022, two days after she was sworn in as mayor. The complaint states that she had "knowledge of 'Evergreen' and shared her concerns about it" at that first meeting.

"Evergreen" is a reference to a clause in the former city manager's contract that perpetually renewed the contract, absent a written notice. More recently, Ernesto Conde, a former SAPOA consultant, stated in a lawsuit declaration that he and then-SAPOA President Gerry Serrano modeled an "evergreen" clause contained in a contract between the SAPOA and Conde's public relations company after Ridge's evergreen clause.

In a phone interview with *Knock LA*, Hernandez said that "the evergreen ensures that [the city has] a city manager or an executive manager...[T]hey

wouldn't be able to just leave on a whim. The evergreen would either extend a contract for an additional year or two years or in some cases, up to five."

Ridge's claim states these issues were "not remotely an exhaustive list of the misconduct…" and includes redacted information as well as allegations of discriminatory remarks made by Amezcua towards Ridge.

Both the claim and the ethics complaint came at a time when the power dynamic on the city council was being contested by the [SAPOA's recall effort of Councilmember Lopez](#). Lopez was targeted by the SAPOA for voting against the police association's labor proposals in late 2022.

Ridge and her attorney did not respond to multiple requests for comment.

The city's half-year concealment of Ridge's claim is consistent with recent government actions to push for more secrecy. State legislators Josh Lowenthal and Blanca Pacheco introduced bills that target the California Public Records Act (CPRA). This comes after Los Angeles City Attorney Hydee Feldstein-Soto submitted a proposal to other legislators last year that also targeted the [CPRA](#).

Ridge's claim and Hernandez's complaint are windows into the SAPOA's efforts to exert power over the city's top elected official — the mayor.

Regarding the status of Ridge's claim and Hernandez's ethics complaint, Eakins stated that "…the Council had formed ad hoc committees to address both of these matters. We have no additional information to share at this time."

Amezcua did not respond to repeated requests for comment.

**The kind of journalism you actually read to the end.**
**Sign up for our newsletter to get the best of Knock LA right to your inbox.**

| youremail@example.com | Subscribe |

COMPLAINT





Knock LA is a nonprofit community journalism project. We are
dedicated to providing independent journalism and telling the real
story of LA. A project of Ground Game LA.

ABOUT US    SUPPORT    OUR TEAM    PITCH STORIES TO KNOCK LA    CONTACT US    TIPS

Knock LA

# **<u>EXHIBIT I</u>**



**California Secretary of State**
Electronic Filing

**FILED**
Secretary of State
State of California

## Trademark/Service Mark - Application for Registration

| | |
|---|---|
| Type of Mark: | Service Mark |
| Name of Owner (Registrant): | Ground Game LA |

| | |
|---|---|
| Registration Number: | 02040291 |
| Classification Code(s): | 36 |
| File Date: | 08/05/2024 |

**Detailed Filing Information**

1. Application for Registration of:  Service Mark

2. Owner (Registrant) Information:
   a. Name of Owner (Registrant):  Ground Game LA

   b. Business Address:  1006 1/2 N. Vermont Ave., Los Angeles, CA, 90029, US

   c. Declaration of Ownership:
   Registrant declares that the Registrant is the owner of the mark, that the mark is in use, and that to the Registrant's knowledge, no other person has registered the mark in this state, or has the right to use the mark, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion, to cause mistake, or to deceive.

   d. Business Structure:  Corporation
   California

   e. Name of General Partner(s):  None

3. Description of Mark:
   KNOCK LA

See drawing page attached and incorporated by reference.

COMPLAINT

**California Secretary of State**
Electronic Filing

4.  Design Code(s):

5.  Disclaimer:
    LA "The Mark consists of standard characters without claim to any particular font style, size, or color."

6.  Date of First Use of Mark

    a.  Date Mark was First Used Anywhere:     06/20/2017

    b.  Date Mark was First Used in California:     06/20/2017

7.  Identification of Goods or Products/Services:

    a.  List specific Goods or Products/Services:
        Charitable fundraising services used to fund the dissemination of news, commentary, statistics and other information related to current events and local politics and politicians.

    b.  Classification Code(s):                     36

8.  U.S. Patent and Trademark Information

    a.  File Date:

    b.  Serial/File Number:

    c.  Status of Application:

    d.  If Refused, Why?:

9.  How is the Mark Used:

    On Letterhead, Advertisement/Branding On Webpage

10. Type of Specimen:

    Website

    See Specimen attached and incorporated by reference.

COMPLAINT

# California Secretary of State
## Electronic Filing

11. Authorized Representative:                    Yes

**Declaration of Accuracy and Signature**

I declare that all the foregoing information contained in this Application is accurate, true and correct and that I am authorized to sign this Application. I understand that if I willfully state in the Application any material fact that I know to be false, I will be subject to a civil penalty of not more than ten thousand dollars ($10,000.00).

Registrant or Authorized Representative:    Deborah E. Greaves

Date Electronically Signed:    08/05/2024

*The remainder of this page is intentionally left blank.*

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.

COMPLAINT

 **News** **Analysis** **Opinion** **Culture** **Incarceration Reporting** **Photo Essays** 🔍 

TRENDING   **INCARCERATION REPORTING INITIATIVE**   **SANTA ANA**   **CULTURE**       

# Support

You angel. You genius. You beautiful angel genius. Thank you for choosing to support Knock LA. We tell stories no one else in Los Angeles can because our journalism is independent, funded by beautiful geniuses like you.

For one-time donations, check out our ActBlue page.

For recurring donations, check out our Patreon.

To inquire about other ways to support, including larger or cash donations, please email editors@knock.la

But please don't send us any crypto or NFTs, they are incredibly dumb and bad for society and we're not going to use them.



Knock LA is a nonprofit community journalism project. We are dedicated to providing independent journalism and telling the real story of LA. A project of Ground Game LA.

ABOUT US     SUPPORT     OUR TEAM     PITCH STORIES TO KNOCK LA     CONTACT US     TIPS

COMPLAINT

Knock LA

# **EXHIBIT J**



## California Secretary of State
### Electronic Filing

**FILED**
Secretary of State
State of California

# Trademark/Service Mark - Application for Registration

| | |
|---|---|
| Type of Mark: | Service Mark |
| Name of Owner (Registrant): | Ground Game LA |

| | |
|---|---|
| Registration Number: | 02040293 |
| Classification Code(s): | 41 |
| File Date: | 08/02/2024 |

**Detailed Filing Information**

1. Application for Registration of:    Service Mark

2. Owner (Registrant) Information:
   a. Name of Owner (Registrant):    Ground Game LA

   b. Business Address:    1006 1/2 N. Vermont Ave., Los Angeles, CA, 90029, US

   c. Declaration of Ownership:
   Registrant declares that the Registrant is the owner of the mark, that the mark is in use, and that to the Registrant's knowledge, no other person has registered the mark in this state, or has the right to use the mark, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion, to cause mistake, or to deceive.

   d. Business Structure:    Corporation
   California

   e. Name of General Partner(s):    None

3. Description of Mark:
   KNOCK LA

See drawing page attached and incorporated by reference.

Registration Number: 02040293

# California Secretary of State
## Electronic Filing

4. Design Code(s):

5. Disclaimer:
   LA "The Mark consists of standard characters without claim to any particular font style, size, or color."

6. Date of First Use of Mark

   a. Date Mark was First Used Anywhere:    06/20/2017

   b. Date Mark was First Used in California:  06/20/2017

7. Identification of Goods or Products/Services:

   a. List specific Goods or Products/Services:
      Electronic publishing services, namely, publication of text and graphic works of others on the internet featuring information, news and commentary about politics, elections, and current events; Providing information, news, and commentary in the field of current events via the Internet

   b. Classification Code(s):                   41

8. U.S. Patent and Trademark Information

   a. File Date:

   b. Serial/File Number:

   c. Status of Application:

   d. If Refused, Why?:

9. How is the Mark Used:

   On Letterhead, Advertisement/Branding On Webpage

10. Type of Specimen:

   Website

See Specimen attached and incorporated by reference.

COMPLAINT

# California Secretary of State
## Electronic Filing

11. Authorized Representative:                    Yes

**Declaration of Accuracy and Signature**

I declare that all the foregoing information contained in this Application is accurate, true and correct and that I am authorized to sign this Application. I understand that if I willfully state in the Application any material fact that I know to be false, I will be subject to a civil penalty of not more than ten thousand dollars ($10,000.00).

Registrant or Authorized Representative:      Deborah E. Greaves

Date Electronically Signed:                    08/02/2024

*The remainder of this page is intentionally left blank.*

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.

COMPLAINT



News　Analysis　Opinion　Culture　Incarceration Reporting　Photo Essays



SUPPORT

---

TRENDING　**INCARCERATION REPORTING INITIATIVE**　**SANTA ANA**　**CULTURE**

   



## Sweltering Heat and Inhuman Conditions at CRC Norco

By CURB

Californians United for a Responsible Budget (CURB) explains why CRC Norco must be the next California prison to close.



## JoogSzn Is One Of LA's Most Influential Music Producers. Cops Still Harass Him.

By Mz Free

His credits include music from 03 Greedo, Shoreline Mafia and Drakeo The Ruler's heralded *Thank You For Using GTL.*



## In Los Angeles, Shade Most Often Goes to the Privileged

By Pilar Marrero

After the hottest summer on record, officials vow again to make the city's tree cover more equitable.

## Inside Safe: More Than A Year of Limited Success and Ongoing Controversy

By Sean Beckner-Carmitchel

The city has struggled to keep unhoused people both inside or safe.



## The High Stakes of Glendale Unified School District's School Board Election



## A Hospital's Overflowing Emergency Room, Our Sick Health System

By Jordan Kurtzman

By Mark Kreidler

Parents, teachers, students, and LGBTQ+ community members face harassment and threats ahead of GUSD school board election

Thousands of low-income patients cannot survive without MLK Hospital. The South L.A. hospital cannot survive on what it is paid by public insurance.



**LASD Records**

Databases of Known Associates of Deputy Gangs in the Los Angeles County Sheriff's Department and Deputy Shootings 1984-Current

Part of Cerise Castle's A Tradition of Violence and Life Under the Gun: An Analysis of Shootings by the Los Angeles County Sheriff's Department

COMPLAINT





Knock LA is a journalism and commentary project by Ground Game LA. We are dedicated to giving a voice to the left and uplifting marginalized communities.

ABOUT US    SUPPORT    OUR TEAM    PITCH STORIES TO KNOCK LA    CONTACT US    TIPS    GROUND GAME LA





## The Protected Class

By Cerise Castle

An examination of the first documented gangs in the Los Angeles County Sheriff's Department.



## La clase protegida

By Cerise Castle

Una examinación de las primeras pandillas documentadas en el departamento del sheriff del condado de Los Ángeles



**La guía de votación progresista de Knock LA**



**Celebrating the Year of the Dragon in Los Angeles:**



**Here's What You Missed in the Third Week of**



**In the Los Angeles Housing Crisis, a Senior Fights to**

para las elecciones
primarias de marzo 2024



The Knock LA Progressive
Voter Guide for the March
2024 Primary Election

"We Just Want to Spread
the Love"



LA City Attorney Files
Second Lawsuit Over
Records Disclosed by City

February at LA City
Council



A Night They Can't
Remember, at One of the
Country's Most Popular
LGBTQ+ Bars

Keep His Place in the
World



Three Months of
Disruption



LA Sheriff Promised
Reform and
Accountability. Critics See
Neither a Year Later.

The View From Inside: On
Surviving Solitary



Mexican Cultural Institute
Los Angeles Fights to Stay
in El Pueblo



A History of LGBTQ+ Cops
in Film and TV

All Knock LA Stories

Knock LA

# **EXHIBIT K**

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98515278**
**Filing Date: 04/23/2024**

*NOTE: Data fields with the \* are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

---

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| **\*MARK** | \\\\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1 \ FTK0002.JPG |
| **\*SPECIAL FORM** | YES |
| **USPTO-GENERATED IMAGE** | NO |
| **LITERAL ELEMENT** | KNOCKLA |
| **\*COLOR MARK** | NO |
| **\*COLOR(S) CLAIMED** (If applicable) | |
| **\*DESCRIPTION OF THE MARK** (and Color Location, if applicable) | The mark consists of the image of the palm side of a fist surrounded by an arch that starts on one side of the fist and ends on the other side. Next to the image is the stylized composite word KNOCKLA in all capital letters with the word KNOCK having a font size that is approximately double the font size of LA. |
| **PIXEL COUNT ACCEPTABLE** | NO |
| **PIXEL COUNT** | 9317 x 7200 |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | Ground Game LA |
| **\*MAILING ADDRESS** | 1006 1/2 N. Vermont Ave. |
| **\*CITY** | Los Angeles |
| **\*STATE** (Required for U.S. applicants) | California |
| **\*COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **\*ZIP/POSTAL CODE** (Required for U.S. and certain international addresses) | 90029 |
| **\*EMAIL ADDRESS** | XXXX |

## LEGAL ENTITY INFORMATION

| | |
|---|---|
| *TYPE | CORPORATION |
| * STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION | California |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| | |
|---|---|
| *INTERNATIONAL CLASS | 035 |
| *IDENTIFICATION | Charitable services, namely, promoting public awareness of **politics, elections, and current events**; Providing information, news, and commentary in the field of politics |
| *FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 06/20/2017 |
| FIRST USE IN COMMERCE DATE | At least as early as 06/20/2017 |
| SPECIMEN FILE NAME(S) | |
| ORIGINAL PDF FILE | SPE0-10720317941-20240422 191141290068_._Specimen_CL_35.pdf |
| CONVERTED PDF FILE(S) (7 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0003.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0004.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0006.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\985\152\98515278\xml1\ FTK0009.JPG |
| SPECIMEN DESCRIPTION | Applicant's website with mark displayed |
| WEBPAGE URL | https://knock-la.com/santa-ana-mayor-amezcua-police-union-political-favors/ |
| WEBPAGE DATE OF ACCESS | 04/22/2024 |

## ADDITIONAL STATEMENTS SECTION

| | |
|---|---|
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## ATTORNEY INFORMATION

| NAME | Deborah E. Greaves |
|---|---|
| ATTORNEY DOCKET NUMBER | 9420104.1001 |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | Offit Kurman P.A. |
| STREET | 445 S. Figueroa Street, 18th Floor |
| CITY | Los Aangeles |
| STATE | California |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 90071 |
| PHONE | 213-341-1340 |
| FAX | 213-624-9441 |
| EMAIL ADDRESS | Trademarks@offitkurman.com |
| OTHER APPOINTED ATTORNEY | at the firm Offit Kurman |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Deborah E. Greaves |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | Trademarks@offitkurman.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | Deborah.Greaves@offitkurman.com; Tom.Long@offitkurman.com |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 250 |
| *TOTAL FEES DUE | 250 |
| *TOTAL FEES PAID | 250 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /William T. Przylucki/ |
| * SIGNATORY'S NAME | William T. Przylucki |
| * SIGNATORY'S POSITION | CEO |
| * DATE SIGNED | 04/23/2024 |
| SIGNATURE METHOD | Sent to third party for signature |

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98515278**
**Filing Date: 04/23/2024**

## To the Commissioner for Trademarks:

**MARK:** KNOCKLA (stylized and/or with design, see mark)
The literal element of the mark consists of KNOCKLA. The applicant is not claiming color as a feature of the mark. The mark consists of the image of the palm side of a fist surrounded by an arch that starts on one side of the fist and ends on the other side. Next to the image is the stylized composite word KNOCKLA in all capital letters with the word KNOCK having a font size that is approximately double the font size of LA.
The applicant, Ground Game LA, a corporation of California, having an address of
    1006 1/2 N. Vermont Ave.
    Los Angeles, California 90029
    United States
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 035:  Charitable services, namely, promoting public awareness of politics, elections, and current events; Providing information, news, and commentary in the field of politics

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 035, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 06/20/2017, and first used in commerce at least as early as 06/20/2017, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Applicant's website with mark displayed.

**Original PDF file:**
SPE0-10720317941-20240422 191141290068_._Specimen_C L_35.pdf
**Converted PDF file(s)** (7 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7

Webpage URL: https://knock-la.com/santa-ana-mayor-amezcua-police-union-political-favors/
Webpage Date of Access: 04/22/2024

The owner's/holder's proposed attorney information: Deborah E. Greaves. Other appointed attorneys are at the firm Offit Kurman. Deborah E.

Greaves of Offit Kurman P.A., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at

445 S. Figueroa Street, 18th Floor
Los Aangeles, California 90071
United States
213-341-1340(phone)
213-624-9441(fax)
Trademarks@offitkurman.com

The docket/reference number is 9420104.1001.
Deborah E. Greaves submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The applicant's current Correspondence Information:

Deborah E. Greaves

PRIMARY EMAIL FOR CORRESPONDENCE: Trademarks@offitkurman.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): Deborah.Greaves@offitkurman.com; Tom.Long@offitkurman.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $250 has been submitted with the application, representing payment for 1 class(es).

<div align="center">

**Declaration**

</div>

☑ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /William T. Przylucki/   Date: 04/23/2024
Signatory's Name: William T. Przylucki
Signatory's Position: CEO
Signature method: Sent to third party for signature
Payment Sale Number: 98515278

Payment Accounting Date: 04/23/2024

Serial Number: 98515278
Internet Transmission Date: Tue Apr 23 16:59:04 ET 2024
TEAS Stamp: USPTO/FTK-XXX.XXX.XXX.XX-202404231659049
81704-98515278-87019c7f4f84054376363625c
10f298a19335e35d079c79beeaf908a9f36b02c-
DA-59046629-20240423162655891765





TRENDING   INCARCERATION REPORTING INITIATIVE    SANTA ANA    CULTURE

**NEWS**          SANTA ANA    SANTA ANA POLICE OFFICERS ASSOCIATION    VALERIE AMEZCUA

# Newly Released Documents Show Santa Ana Police Union's Grip on Santa Ana Mayor

City records allege Mayor Amezcua ousted two top officials as a favor for cops and violated state open meeting law.

Ben Camacho | March 29, 2024



COMPLAINT



*Santa Ana Mayor Valerie Amezcua sitting at the dais. January 16, 2024. (Photo: Ben Camacho | Knock
LA)*

In what appears to be a political favor to the Santa Ana Police Officers
Association (SAPOA), Santa Ana Mayor Valerie Amezcua played a pivotal
role in the removal of then-City Manager Kristine Ridge and then-Chief
David Valentin, as revealed by public records acquired by *Knock LA*.

The role of the police labor union and Mayor Amezcua in the ouster of
Ridge and Valentin was revealed in a [legal claim](#) submitted to the city by
Ridge. In that claim, Ridge alleged that she experienced "discrimination,
harassment, retaliation and [pressure] to take illegal action."

Meanwhile, Councilmember Johnathan Hernandez submitted an [ethics
complaint](#) on August 1, 2023, to the city attorney alleging that Amezcua
violated the state's [Brown Act](#) in carrying out the strategy to "fire the City
Manager and [Police] Chief [David] Valentin." This complaint is still
pending.

Ridge's claim, dated September 22, 2023, threatened legal action against the city and sparked settlement discussions. This ultimately resulted in her resignation and the city council's vote to pay her a settlement of over $600,000 to settle her legal claim. Attempts by the city to conceal the reasons behind the substantial payout to Ridge were highlighted when it repeatedly declined to release her claim in response to numerous public records requests made by *Knock LA* over nearly six months.

Ultimately, the city council discussed *Knock LA's* Public Records Act request for the disclosure of Ridge's legal claim in a closed session on March 5, after *Knock LA* emailed relevant case law to the city attorney, showing the document was indeed a public record. The city released the record on March 11.

Via email, city spokesperson Paul Eakins stated that the "matter was placed on the closed session agenda due to significant exposure to litigation…" and that "…questions arose about the confidentiality of the document. Staff needed time to evaluate the issues and obtain legal advice before releasing the document."

Hernandez's ethics complaint, shared with *Knock LA*, alleged that Amezcua "was adamant about firing the Chief and demonstrated knowledge and an understanding that in order to fire the Chief she has to fire the City Manager (CM), Kristine Ridge."

Hernandez alleged Amezcua stated that the "[SAPOA] is not lobbying her or forcing her to attempt [the strategy]…"

This strategy is what the SAPOA allegedly asked for in 2016 when then-Chief Carlos Rojas was ousted by former SAPOA-funded elected officials. In a 2016 lawsuit, Rojas alleged that city officials backed by the SAPOA conspired to oust him as police chief by first firing then-city manager David Cavazos. The strategy was allegedly orchestrated by the SAPOA, former Mayor Miguel Pulido, and former councilmembers Jose Solorio and Juan Villegas.

Rojas' lawsuit states "Serrano and the POA spent approximately
$300,000.00–$400,000.00 in the 2016 elections to support candidates who
agreed in advance that, if elected, they would vote to remove [Cavazos,
Rojas and City Attorney Sonia Carvalho]".

The strategy ushered in by Amezcua is a repeat of history by one of the
city's largest political players.

.      .      .

While the press release attached to the severance and release agreement
between the city and Ridge includes amicable language from Amezcua and
Ridge, the claim, which initiated the settlement talks, tells a different
story.

Ridge alleged that she "endured repeated pressure from specific elected
officials contrary to State law to take care of Police Union President, Gerry
Serrano's, pension" and had "been repeatedly directed to provide Mr.
Serrano with a higher paying salaried position without regard to civil
service provisions nor qualifications."

According to Ridge's claim, Amezcua threatened Ridge's job after Ridge
told the mayor that placing a certain item on the city council agenda
would violate the Brown Act — the state's opening meeting law.  Because
the City redacted the agenda item from Ridge's claim letter when it
released the letter to *Knock LA*, it is unclear how the placement of the item
on the agenda would have violated the Brown Act. Ridge's claim letter also
alleges that during the city's contract negotiations with the police union,
Amezcua "prohibited Ms. Ridge from speaking or answering questions…"
related to those negotiations.

The mayor's alleged gag order directed at Ridge denied the city's top
officer the ability to provide input on contract negotiations between the
city and the police union, the latter of which is Amezcua's largest donor.

–

Amezcua received almost $218,000 from the SAPOA in support of her 2022 mayoral campaign. She endorsed the SAPOA's failed recall attempt of council member Jessie Lopez. She has also publicly announced that she is "proud" to have the support of the SAPOA.



*A flyer advocating for the recall of Councilmember Jessie Lopez, endorsed by Mayor Amezcua. (Photo: Ben Camacho | Knock LA)*

According to Hernandez's complaint, he met with Amezcua on December 15, 2022, two days after she was sworn in as mayor. The complaint states that she had "knowledge of 'Evergreen' and shared her concerns about it" at that first meeting.

"Evergreen" is a reference to a clause in the former city manager's contract that perpetually renewed the contract, absent a written notice. More recently, Ernesto Conde, a former SAPOA consultant, stated in a lawsuit declaration that he and then-SAPOA President Gerry Serrano modeled an "evergreen" clause contained in a contract between the SAPOA and Conde's public relations company after Ridge's evergreen clause.

In a phone interview with *Knock LA*, Hernandez said that "the evergreen ensures that [the city has] a city manager or an executive manager...[T]hey

wouldn't be able to just leave on a whim. The evergreen would either
extend a contract for an additional year or two years or in some cases, up
to five."

Ridge's claim states these issues were "not remotely an exhaustive list of
the misconduct…" and includes redacted information as well as allegations
of discriminatory remarks made by Amezcua towards Ridge.

Both the claim and the ethics complaint came at a time when the power
dynamic on the city council was being contested by the SAPOA's recall
effort of Councilmember Lopez. Lopez was targeted by the SAPOA for
voting against the police association's labor proposals in late 2022.

Ridge and her attorney did not respond to multiple requests for comment.

The city's half-year concealment of Ridge's claim is consistent with recent
government actions to push for more secrecy. State legislators Josh
Lowenthal and Blanca Pacheco introduced bills that target the California
Public Records Act (CPRA). This comes after Los Angeles City Attorney
Hydee Feldstein-Soto submitted a proposal to other legislators last year
that also targeted the CPRA.

Ridge's claim and Hernandez's complaint are windows into the SAPOA's
efforts to exert power over the city's top elected official — the mayor.

Regarding the status of Ridge's claim and Hernandez's ethics complaint,
Eakins stated that "…the Council had formed ad hoc committees to address
both of these matters. We have no additional information to share at this
time."

Amezcua did not respond to repeated requests for comment.

**The kind of journalism you actually read to the end.**
Sign up for our newsletter to get the best of Knock LA right to your inbox.

youremail@example.com                                    Subscribe





Knock LA is a nonprofit community journalism project. We are dedicated to providing independent journalism and telling the real story of LA. A project of Ground Game LA.

ABOUT US     SUPPORT     OUR TEAM     PITCH STORIES TO KNOCK LA     CONTACT US     TIPS

COMPLAINT

# **EXHIBIT L**



Tabatha Yelos <tabatha@groundgamela.org>

## URGENT: Knock LA Asset Transfer Agreement
1 message

**Cerise Castle** <cerise@knock.la>                                      Wed, Apr 10, 2024 at 9:09 AM
To: Tanya Ortiz <ortiz.tanyag@gmail.com>, Marissa Roy <marissa.roy310@gmail.com>, jaimezeledonsr@gmail.com,
Anthony Weiss <anthonywweiss@gmail.com>, Ace Katano <Ace@groundgamela.org>, Alex Malek
<alex.malek@groundgamela.org>, Bill Przylucki <bill@groundgamela.org>, John Ma <johnma@groundgamela.org>,
"Meghan (killa) Choi" <meghan@groundgamela.org>, Tabatha Yelos <tabatha@groundgamela.org>, Tanya Ortiz
<tanya@groundgamela.org>, editor@vagabondbooks.net, daisyvega04@gmail.com, jataunv@gmail.com,
cwilli7269@aol.com, sandraobando47@gmail.com, kmoore1100@gmail.com
Cc: Katja Schatte <katja@lettersandbytes.com>, Ben Camacho <bencamachophotography@gmail.com>, Nalae White
<nalaewhite@gmail.com>, rafael@banesecurity.io

Good morning,

Cerise Castle here, Executive Editor at Knock LA.

I am writing to you in your capacity as a member of the Ground Game LA (GGLA) or People Organized for Westside
Renewal board(s).

It has come to my attention that several of you are unaware that Knock LA has moved to formally separate from
GGLA and sent an agreement to transfer our assets last month.

The separation is a conversation that has been ongoing since 2021. The decision was escalated and executed
following several severe breaches of editorial reach, GGLA members engaging in racist practices against Knock LA
writers and administrative staff, as well as several other troubling incidents. We have detailed this in an open letter,
which I have attached to this message.

Knock LA sent an asset transfer agreement for both our digital and financial assets in GGLA's possession last month
(3/15/2024) with a proposed deadline of transfer of 4/15/2024. GGLA has not responded to this.

Without the means to control our website and our finances, we do not have a news organization. By holding onto our
assets, GGLA is actively suppressing a free press in Los Angeles. In a time where we are seeing the decimation of
journalism, GGLA is standing with venture capital firms and billionaires in overseeing the demise of local news.

I urge you to stand by your purported principles and to return Knock LA's assets to Knock LA.

Thank you.
--
Cerise Castle
Executive Editor, Knock LA

---

**2 attachments**

📄 **Assets Transfer Agreement from GGLA to KLA (1).pdf**
122K

📄 **Reasons for Separation from Ground Game LA.pdf**
50K



Tabatha Yelos <tabatha@groundgamela.org>

---

## Update on our fight for independence
1 message

---

**Knock LA** <knock@knock.la>                                                   Tue, Apr 23, 2024 at 3:15 PM
To: Tabatha Yelos <tabatha@groundgamela.org>

Thank you for your continued support of our newsroom.

We are writing to give a brief update on our campaign for independence from Ground Game LA.

As of the writing of this newsletter:

- Knock LA administrators and reporters are still locked out of our website. Stories that have been approved have no means to be published.
- Knock LA administrators and reporters are still locked out of our newsroom's social media accounts.
- None of our administrators or reporters have been paid for their work in April.

In the meantime, members of Ground Game LA have begun representing themselves as editors of Knock LA and have begun soliciting our past freelancers to scab and write on the website while the lockout of regular contributors and administrators continues.

Our reporters uncovered that these same Ground Game LA has not been in good standing with the California Franchise Tax Board for several years. If Ground Game LA can't run its own organization, how do they expect to run a newsroom?

Furthermore, these Ground Game LA members who are representing themselves as part of the Knock LA newsroom have been paid by the campaigns of elected officials endorsed by Ground Game, and even worked for the elected's offices. How can they be expected to deliver unbiased coverage?

**We are asking our supporters to sign on to our open letter demanding Ground Game LA return what is ours, and to share our newsroom's video summarizing what happened and post using this toolkit.
Please cancel your donations to Knock LA and Ground Game LA – donate instead to our friends at LA Taco, another critical independent whose staff has been furloughed due to a lack of funding.**

Ground Game LA: hands off our work! Apologize to Knock LA, give us back our stuff, and cease the stifling of LA journalism!
Free Knock LA!

You received this email from Knock LA. If you would like to unsubscribe, click here.



Tabatha Yelos <tabatha@groundgamela.org>

---

**UPDATE From Knock LA: We still haven't been paid & are still locked out of our website.**
1 message

---

**Knock LA** <knock-la@ghost.io>                                       Fri, May 31, 2024 at 9:54 AM
Reply-To: newsletter@knockla.org
To: tabatha@groundgamela.org



# UPDATE From Knock LA: We still haven't been paid & are still locked out of our website.

By Knock LA • 31 May 2024                                          View in browser

On behalf of our entire team, we would like to thank you for your continued support of our newsroom and our fight for independence from Ground Game LA (GGLA)/People Organized for Westside Renewal (POWER).

It has now been nearly two months since GGLA/POWER decided to gut one of LA's most beloved independent newsrooms.

- **We are saddened to report that Ben Camacho and several contributors have not been paid for their work. <u>We are asking</u>**

COMPLAINT

**for your help to raise $5,000 to cover the missing wages via
our new fundraising platform.**

- **Our administrative team still has no access to their workspace
  accounts.**

- **We are still locked out of our social media accounts, halting
  our critical breaking news coverage and further sharing of our
  reporting.**

- **We are still locked out of our website, blocking all of our news
  coverage for the past three weeks.**

- **Contributor Sean Beckner-Carmitchel was _ARRESTED_ while
  covering student demonstrations for divestment at UCLA.
  GGLA/POWER's shutdown of the Knock LA website presented
  _tremendous_ difficulty in advocating for Beckner-Carmitchel's
  release.**

## Despite these tremendous setbacks, several of our contributors have led coverage of the brutal attacks by Zionist agitators on UCLA students.

Sean Beckner-Carmitchel gave a timeline breakdown of the attack on
UCLA's student encampment for Left Coast Right Watch.

Joey Scott

Constanza Eliana Chinea wrote about UCLA administrators putting
students at risk in their handling of the student encampment for LA Public
Press.

Cerise Castle covered the mysterious disappearance and death of a
Lancaster man last seen with LA County Sheriff's deputies for LA Public
Press.

GGLA/POWER appear to be doubling down in their fight against independent journalism. They have hired an attorney who sent our newsroom a threatening letter demanding that we stop reporting. They're also holding a fundraiser for themselves on June 5th Hamburger Mary's. We don't think is to get us paid - Knock LA received a $50,000 grant from the California Endowment that POWER received in the role of our fiscal sponsor. It's unclear to us what GGLA/POWER has done with our money - they certainly haven't paid us.



Even more strangely, they plan on representing themselves as Knock LA at LA Zine Fest on June 23.

# We want to put our newsroom back to work. We're asking for your <u>donations via our new Kofi account</u>, and for you and your network to <u>share and sign our open letter demanding GGLA/ POWER return what is ours.</u>

Thank you for your continued support,

Knock LA

*Our newsroom members:*

Morgan Keith, Knock LA President, Executive Editor

Kat Schatte, Knock LA Managing Editor

Rafael Gutierrez, Knock LA Chief Information Officer

Ben Camacho, Knock LA Senior Editor – Photography

Nalaé White,  Knock LA Senior Editor – Social Media

Sean Beckner-Carmitchel, Knock LA Contributor

Cerise Castle, Knock LA Contributor

Constanza Eliana Chinea, Knock LA Contributor

Maggie Clancy, Knock LA Contributor

Abraham Marquez, Knock LA Contributor

Joey Scott, Knock LA Contributor

Erin Witsi, Knock LA Contributor

---

Knock LA © 2024 – <u>Unsubscribe</u>

◯ **Powered by Ghost**