**ARS COUNSEL, P.C.**
Almuhtada Smith (Cal. Bar No. 263762)
asmith@arscounsel.com
515 S. Flower St., 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565
Attorney for Defendant Cerise Castle

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GROUND GAME LA, a California nonprofit corporation<br><br>Plaintiff,<br><br>v.<br><br>CERISE CASTLE, an individual; BENJAMIN CAMACHO, an individual; KATJA SCHATTE, an individual; MORGAN KEITH, an individual; KNOCK LA, a California nonprofit corporation,<br><br>Defendants. | Case No. 2:25-cv-03852-MRA-JPR<br><br>**DEFENDANT CERISE CASTLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. P. 12(b)(6) and 12(b)(1); 12(e), 12(f) in the alternative]<br><br>[Filed concurrently with (1) [Proposed] Order; (2) Declaration of Cerise Castle; (3) Declaration of Almuhtada Smith; (4) Declaration of Karl Mill; and (5) Request for Judicial Notice]<br><br>Judge: Hon. Mónica Ramírez Almadani |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 13, 2025 at 1:30p.m., or as soon thereafter as the matter may be heard in Courtroom 9B of the United States District Court for the Central District of California, located at the Ronald Reagan Building & U.S. Courthouse, 411 W. Fourth Street, Santa Ana, CA 92701, Defendant Cerise Castle ("Ms. Castle") will and hereby does move this Court to dismiss, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, the following claims asserted by Plaintiff Ground Game LA ("GGLA"): (1) Federal Trademark Infringement (Count 1); (2) California Statutory Trademark Infringement (Cal. Bus. & Prof. Code § 14245) (Count 3); (3) California Common Law Trademark Infringement (Count 4); (4) Defamation (Count 8); (5) Intentional Interference with Prospective Economic Advantage (Count 9); (6) Unfair Competition (Bus. & Prof. Code § 17200) to the extent predicated on speech (Count 5); (7) False Designation of Origin (15 U.S.C. § 1125(a), to the extent predicated on expressive, non-commercial speech (Count 2); and (8) trademark-based injunctive/declaratory relief as moot.

Defendant moves under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Plaintiff's trademark, § 1125(a), defamation, interference, and UCL claims to the extent pled against Ms. Castle, and to dismiss all prospective trademark relief as moot. In the alternative, Defendant seeks a more definite statement under Rule 12(e) and an order striking unavailable remedies under Rule 12(f).

This Motion is based on this Notice, the Memorandum below, the pleadings on file, the concurrently filed Declaration of Cerise Castle (USPTO TSDR records showing abandonment by another defendant, unconditional disavowal of any 'KNOCK LA' use/registration), Declaration of Karl Mill (no-assets dissolution request) and any argument the Court may permit.

Local Rule 7-3 Compliance. This motion is made following a real-time conference of counsel pursuant to L.R. 7-3 on August 21, 2025, which did not resolve the issues presented.

DATED: August 29, 2025             ARS COUNSEL, P.C.


By: /s/Almuhtada Smith
Almuhtada Smith
Attorney for Defendant
Cerise Castle

# TABLE OF CONTENTS

Page

I. INTRODUCTION..................................................................................................1

II. FACTUAL BACKGROUND................................................................................2

III. LEGAL STANDARD............................................................................................3

IV. ARGUMENT.........................................................................................................3

   A. Federal Trademark Infringement (Count 1).....................................3-6

   B. California Statutory Trademark Infringement (Count 3)...................6

   C. Defamation (Count 8) Is Meritless and Fails Rule 8/12(b)(6)...........6

      1. No Words, No Context, No Claim............................................6

      2. Opinion, Rhetorical Value Judgments, And Substantial Truth.................................................................................6

      3. Public-Figure Fault Not Plausibly Pled....................................7

      4. Relief..........................................................................................7

   D. Intentional Interference (Count 9) Lacks Any Independent Wrongful Act...................................................................7

   E. UCL (Count 5) Is Derivative and Seeks Improper Remedies..........7

   F. § 1125(a) Must Be Narrowed—Dismiss the Speech-Only Theory.................................................................................8

   G. Trademark-Based Injunctive/Declaratory Relief Is Moot (Rule 12(b)(1))........................................................................8

   H. Trade-Secret Misappropriation (CUTSA/DTSA): No Secrecy, No Value, No Misappropriation; CUTSA Preempts Piggyback Tort Theories...........................................................8

      1. No 'Trade Secret' Is Pled Because Plaintiff Took No Reasonable Secrecy Measures.........................................8

i

2. Plaintiff Fails To Plead Independent Economic Value......................9

3. No Plausible 'Misappropriation' By Any Specific Defendant................. 9

4. DTSA Adds Nothing; It Rises Or Falls With CUTSA....................10

5. CUTSA Preemption: Conversion, UCL, And Interference Claims Predicated On The Same 'List' Nucleus Are Displaced. ......................................................10

6. Case-Management Safeguard: Require a § 2019.210 Disclosure And Stay Discovery..................................10

7. Relief On Trade-Secret Counts......................................................10

V. **ALTERNATIVE RELIEF UNDER RULES 12(e) AND 12(f)**................10-11

VI. **CONCLUSION**...............................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
    226 Cal. App. 4th 26 (2014) ................................................................................... 9

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ........................................................................................... 4;8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 3

*BladeRoom Group Ltd. v. Emerson Elec. Co.*,
    20 F.4th 1231 (9th Cir. 2021) ........................................................................... 10

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995) ........................................................................................ 7

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) .............................................................................. 9

*In re Providian Credit Card Cases*,
    96 Cal. App. 4th 292 (2002) ............................................................................... 9

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009) ........................................................................... 10

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ............................................................................ 3

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................................................ 6

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,

    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ................................................................6

**Statutes**

Cal. Civ. Code § 3426.1(d)................................................................................................8

Cal. Code Civ. Proc. § 2019.210.....................................................................................10

Cal. Bus. & Prof. Code § 17200........................................................................................7

**Rules**

Fed. R. Civ. P. § 8.............................................................................................................6

Fed. R. Civ. P. § 12(b)(1).....................................................................................3,4, 6,8,11

Fed. R. Civ. P. § 12(b)(6).................................................................................................4,6

Fed. R. Civ. P. § 12(e).........................................................................................1, 7, 10, 11

Fed. R. Civ. P. § 12(f)..............................................................................................1, 10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit represents nothing more than a retaliatory, speech-suppressive campaign thinly disguised as tort and trademark claims. Plaintiff has targeted Ms. Castle, a journalist, for engaging in constitutionally protected speech on matters of clear public concern—nonprofit governance, labor practices, and donor transparency. Notably, Plaintiff fails to plead even a single concrete falsehood, any independently wrongful act beyond protected speech, or any plausible 'use in commerce' to support its Lanham Act theory against Ms. Castle specifically. These fundamentally deficient claims warrant immediate dismissal.

Any forward-looking trademark relief is moot. Defendants, including Ms. Castle, abandoned the prior "KNOCK LA" application in December 2024 and unconditionally disavow any present or future use or registration of "KNOCK LA." Under *Already, LLC v. Nike*, Inc., 568 U.S. 85, 91–94 (2013), there is no live controversy supporting injunctive or declaratory relief.

Plaintiff's trade-secret rhetoric fares no better. The alleged 'Confidential List' remains freely accessible on unsecured Google Doc. GGLA has failed to implement even elementary safeguards like access permissions, sharing restrictions, or content compliance rules. The documents are viewable by anyone with the link, with no authentication required. Similarly, GGLA circulated these materials freely in Slack—'available to anyone who wants it'—including to non-employees not bound by NDAs. GGLA itself admitted that Slack was a "compromised public space," posted donor-list links broadly throughout the platform, and maintained no data-security policy whatsoever. That is the antithesis of secrecy. The trade-secret theory fails as a matter of law, and any piggyback tort theories are displaced by CUTSA. The Court should dismiss these baseless claims now.

## II. BACKGROUND

This action was filed the day after entities affiliated with Ms. Castle and Mr. Camacho filed a copyright-infringement lawsuit against GGLA, underscoring the retaliatory nature of Plaintiff's claims. The complaint targets Ms. Castle's April–June 2024 emails, posts, and commentary—core speech on matters of public concern—yet it does not identify any concrete false statement by Ms. Castle. Instead, GGLA pleads undifferentiated "Defendants" allegations and seeks to punish protected criticism through defamation, interference, UCL, and Lanham Act theories.

Ms. Castle has no pending or intended rights in the "KNOCK LA" trademark and has unconditionally disavowed any present or future use or registration of the KNOCK LA mark. A prior KNOCK LA trademark application filed by another defendant was affirmatively abandoned in December 2024. Defendants, including Ms. Castle, did not contest any of the trademark applications filed by Plaintiff. (See Castle Decl. ¶¶ 5.) GGLA's own KNOCK LA trademark application proceeds on a separate administrative docket and is unrelated to the abandoned Knock LA filing.

Separately—and not to be conflated with the USPTO record—the Knock LA nonprofit commenced dissolution in December 2024 and remains in wind-up pending California Attorney General confirmation. On December 17, 2024, counsel submitted a no-assets dissolution request to the AG's Dissolution Program enclosing a Certificate of Dissolution to be filed upon confirmation, and the organization is not operating during wind-up. Ms. Castle resigned from the nonprofit earlier in 2024 and has not participated in operations during wind-up. (Mill Decl. ¶¶ 2 & Ex. A; Castle Decl. ¶¶ 2.)

Plaintiff's own materials also show there was no secrecy around the so-called "confidential lists." The alleged confidential information was stored in Klaviyo, a WordPress plugin on the public-facing Knock LA website, where multiple WordPress account holders had unrestricted access. GGLA broadly circulated donor/prospect spreadsheets and outreach materials via Slack and email (including invitations for

"anyone who wants" to make calls/emails), internally described Slack as "compromised" and a "compromised public space," and lacked a data-security policy according to its own indicators/audit. (See Smith Decl., Ex. G.) The combination of unrestricted WordPress access and unsecured Klaviyo data, along with widespread internal sharing, bears directly on Plaintiff's trade-secret rhetoric and reinforces that Ms. Castle's speech is the only real target here.

In short, there is no rival "Knock LA" entity operated by Ms. Castle, no ongoing or intended trademark use by her, and no pleaded false statements attributed to her—yet GGLA seeks sweeping speech-based tort and trademark remedies divorced from any ongoing conduct.

### III. LEGAL STANDARDS

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order for a claim to be "facially plausible," a plaintiff must allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In doing so, the Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court does not credit allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

### IV. ARGUMENT

**A. Federal Trademark Infringement (Count 1)**

    1. Mootness of forward-looking relief (Rule 12(b)(1)).

Even assuming arguendo that Plaintiff could establish any protectable trademark rights in KNOCK LA (which Ms. Castle expressly reserves the right to contest), there is no live case or controversy for injunctions or declaratory relief. Another defendant affirmatively

abandoned the prior "KNOCK LA" application in December 2024 (See Castle Decl. ¶¶ 2), and unconditionally disavowed any present or future use or registration of the mark. Under *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–94 (2013), that disavowal—combined with abandonment—renders Plaintiff's forward-looking trademark remedies moot. Plaintiff's own later federal and state applications proceeded without opposition from Defendants, which further confirms the absence of any ongoing dispute.

Note: This is distinct from the corporate wind-up. Separately, the Knock LA nonprofit has commenced dissolution and is in wind-up pending Attorney General confirmation—a status we offer via declaration, not as a basis for judicial notice. (Mill Decl.; Castle Decl.) Prospective relief is moot (Rule 12(b)(1)).

### 2. Failure to plead "use in commerce" by Ms. Castle (Rule 12(b)(6)).

Even apart from mootness, the complaint does not plausibly allege that Defendants, including Ms. Castle, used the "KNOCK LA" mark in commerce within the meaning of the Lanham Act. The pleading relies on commentary about authorship/governance and other expressive references, not on any commercial branding or sale of goods/services under the mark. See *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676–79 (9th Cir. 2005) (noncommercial, critical use is not actionable under the Lanham Act). Allegations that Ms. Castle discussed "Knock LA," or identified herself with its legacy, are expressive, noncommercial speech and not a plausible "use in commerce." Moreover, a filed—and abandoned—application is not actionable "use in commerce" (Rule 12(b)(6)). The Lanham Act requires use in commerce, i.e., bona fide commercial use of the mark on goods sold/transported or services rendered to consumers. 15 U.S.C. § 1127. Merely filing an application—especially one later abandoned - does not place a mark in commerce, create confusion, or state a damages claim under § 1114 or § 1125(a). Plaintiff pleads no more than the fact of that filing.

### 3. First Amendment / expressive-use narrowing.

To the extent Count 1 targets Ms. Castle's expressive references (not commercial source identifiers), it is barred by the First Amendment and must be dismissed or narrowed. See, e.g., *Hilton v. Hallmark Cards*, 599 F.3d 894, 904–05 (9th Cir. 2010) (Lanham claims limited where speech is expressive); *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115–19 (9th Cir. 2021) (distinguishing commercial speech from protected editorial content).

### 4. A dormant or informational website is not a commercial source identifier here.

Plaintiff also points to the short-lived knockla.org site. But the complaint alleges no facts that Defendants or Ms. Castle specifically used that site to sell goods or services, no advertising or transactions, and no likelihood of confusion. Noncommercial, editorial, or informational use falls outside the Lanham Act. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676–79 (9th Cir. 2005); see also *Hilton v. Hallmark Cards*, 599 F.3d 894, 904–05 (9th Cir. 2010) (First Amendment limits for expressive works). The site is offline in any event, underscoring mootness of prospective relief.

### 5. Forming a nonprofit is not infringement; "fundraising" allegations are conclusory.

Corporate formation is not "use in commerce," and Plaintiff pleads no nonconclusory facts that Defendants or Ms. Castle specifically commercially branded any fundraising under KNOCK LA (no dates, solicitations, donors, transactions, or confusion). Editorial and advocacy communications about authorship and governance are expressive, noncommercial speech, not Lanham-Act conduct. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115–19 (9th Cir. 2021).

### 6. No plausible damages or proximate cause (*Lexmark*).

Lanham standing requires a commercial injury proximately caused by the alleged deception. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34

(2014). Plaintiff alleges no lost sales, diverted donations, corrective advertising, or other marketplace harm tied to Ms. Castle's commercial use (there is none alleged). Costs of prosecuting Plaintiff's own applications - which Defendants did not oppose—are not Lanham damages and are not proximately caused by Ms. Castle.

As a result, Count 1 should be dismissed as prospective relief is moot, and any backward-looking damages theory fails for lack of plausible use in commerce, confusion, and proximate cause.

### B. California Statutory Trademark Infringement (Count 3)

Count 3 fails for the same reasons as the Federal claim:

- Mootness of all prospective relief given abandonment and unconditional disavowal (Rule 12(b)(1));
- No commercial "use" by Defendants or Ms. Castle specifically - only expressive, noncommercial references—which is not actionable; and
- No plausible damages or proximate causation.

Accordingly, Count 3 should be dismissed, or at minimum limited to exclude expressive speech and any request for prospective relief.

### C. Defamation (Count 8) Is Meritless and Fails Rule 8/12(b)(6)

#### 1. No Words, No Context, No Claim.

The complaint never pleads the actual statements, who said them, when, to whom, or why they are false. That dooms the claim. *See, e.g., Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1011–12 (N.D. Cal. 2017).

#### 2. Opinion, Rhetorical Value Judgments, And Substantial Truth.

Governance, authorship, and labor-practice critiques are quintessential opinion or substantially true characterizations not actionable under *Milkovich v. Lorain Journal*, 497 U.S. 1, 20 (1990).

#### 3. Public-Figure Fault Not Plausibly Pled.

GGLA is at least a limited purpose public figure for multiple reasons: (1) as an

advocacy/news publisher that actively shapes civic discourse; (2) through its "co-governance" model which creates direct operational partnerships with sitting elected officials and government bodies; (3) via its Executive Director Meghan Choi's previous taxpayer-funded role as chief of staff to an elected council member, giving her significant public visibility; (4) through its direct involvement in political campaigns for candidates seeking public office; and (5) through its ongoing political advocacy work and solicitation of public donations. These deep entanglements with government officials and political processes place GGLA squarely in the public eye on matters of clear public concern. Conclusory 'knew it was false' assertions, without specific facts showing actual malice, are legally insufficient. See Declaration of Almuhtada Smith ¶¶ 4-5, Ex. A (Larchmont Buzz article dated February 9, 2021); Ex. B (authenticated social media posts documenting GGLA's political relationships)

### 4. Relief.

Dismiss with prejudice; or at minimum order a Rule 12(e) more definite statement (precise words, speaker, date, audience, and falsity).

### D. Intentional Interference (Count 7) Lacks Any Independently Wrongful Act

The law requires conduct 'wrongful by some legal measure' beyond the interference itself. *Della Penna v. Toyota*, 11 Cal. 4th 376, 392–93 (1995). Plaintiff pleads only the same speech as its defamation theory. Where defamation is inadequately pled, and the speech is protected, the interference claim is baseless. Its vague references to 'donors' and 'journalists' are speculative and legally insufficient.

### E. UCL (Count 5) Is Derivative and Seeks Improper Remedies

The § 17200 count rises and falls with the predicate torts and any speech-only Lanham theory. Once those fail, the UCL theory collapses. In all events, damages are unavailable under the UCL.

### F. § 1125(a) Must Be Narrowed—Dismiss the Speech-Only Theory

To the extent Plaintiff tries to impose Lanham liability for expressive, non-

commercial references to 'Knock LA' (e.g., speaking about authorship/legacy), the claim conflicts with the First Amendment under the Rogers framework as applied in the Ninth Circuit and must be dismissed. Any residual commercial 'use in commerce' theory must be pled with facts (who/what/when/how) rather than group pleading.

### G. Trademark-Based Injunctive/Declaratory Relief Is Moot (Rule 12(b)(1))

Even assuming arguendo that GGLA could establish any protectable rights, the trademark-based claims are now moot because: Defendants withdrew the 'KNOCK LA' application in 2024, the Knock LA entity took action to start its dissolution process the same year, and Defendants, including Ms. Castle, unconditionally disavows any present/future use or registration GGLA's subsequent trademark application, which Defendants did not oppose, further demonstrates there is no 'real and immediate' likelihood of recurrence. Under *Already, LLC v. Nike*, 568 U.S. at 91–94, and Laidlaw's voluntary-cessation framework, the claim for forward-looking relief is moot. Please dismiss all trademark-based injunctive and declaratory requests for lack of jurisdiction. (See Castle Decl.)

### H. Trade-Secret Misappropriation (CUTSA/DTSA): No Secrecy, No Value, No Misappropriation; CUTSA Preempts Piggyback Tort Theories

**1. No "trade secret" is pled because Plaintiff alleges conclusions, not reasonable secrecy measures.**

CUTSA requires that the information (a) derive independent economic value from not being generally known and (b) be subject to reasonable efforts to maintain secrecy. Cal. Civ. Code § 3426.1(d). Paragraphs 31–32 recite that the "Confidential List" lived in password-protected Klaviyo and was "only accessible to three or four people," and that GGLA "understood" it to be secret. Those are labels, not facts establishing reasonable efforts. The pleading omits any NDAs, confidentiality policy, access-log monitoring, export controls, training, need-to-know limits, or revocation protocols. Moreover, Plaintiff maintains the alleged confidential list and other internal documents on publicly

accessible Google Docs without implementing basic security features available through Google Workspace, such as access permissions, sharing restrictions, Data Loss Prevention (DLP), or Content Compliance rules. That is not enough under *Altavion* and *Diodes*. See *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 62–63 (2014) (reasonable steps must be concrete); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253–56 (1968) (broad disclosure defeats secrecy).

Plaintiff's own materials demonstrate a complete lack of meaningful security measures. While claiming the list was protected in Klaviyo (a WordPress plugin), GGLA failed to restrict access to the WordPress platform itself, which had numerous user accounts that could access Klaviyo data. Furthermore, GGLA routinely posted donor/prospect links in Slack inviting "anyone who wants" to make calls/emails, shared information freely with volunteers/contractors, and leadership themselves described Slack as a "compromised"/"compromised public" space. GGLA's own organizational indicators/audit confirms the absence of any data-security policy. (See Smith Decl. ¶ 11, Ex. G.) The Court need not consider these exhibits to dismiss for pleading failure; but if it does, they conclusively demonstrate the absence of reasonable secrecy measures. *Altavion*, 226 Cal. App. 4th at 63.

### 2. Plaintiff Fails To Plead Independent Economic Value.

A basic subscriber/donor contact list tied to publicly available journalism is not inherently proprietary. Plaintiff pleads no non-public fields (e.g., pricing, segmentation, conversion data, yields) that would confer genuine competitive value. *See In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 306 (2002).

### 3. No Plausible 'Misappropriation' By Any Specific Defendant.

The complaint relies on group pleading—it does not allege who acquired the list, when, or by what improper means; nor does it allege any cognizable 'use' (e.g., targeted solicitations traceable to non-public data). Labels like 'took' and 'used' are not facts. Where any access flowed from open, permitted channels (an unlocked Slack share), there

is no 'improper acquisition' as a matter of law. *Cf. BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021).

### 4. DTSA Adds Nothing; It Rises Or Falls With CUTSA.

DTSA mirrors CUTSA's elements and requires a nexus to interstate commerce—none of which is plausibly pled here.

### 5. CUTSA Preemption: Conversion, UCL, And Interference Claims Predicated On The Same 'List' Nucleus Are Displaced.

California courts hold that CUTSA supersedes alternative tort theories (e.g., conversion, interference, UCL) based on the same alleged misappropriation. *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 958–59 (2009). Plaintiff's piggyback theories—each resting on 'taking/using the list'—are thus barred and must be dismissed to that extent.

### 6. Case-Management Safeguard: Require a § 2019.210 Disclosure And Stay Discovery.

Even if any portion of the complaint somehow survives dismissal (which it should not), the Court must require Plaintiff to identify the alleged trade secret with reasonable particularity pursuant to Cal. Code Civ. Proc. § 2019.210 and stay all discovery until such identification is made.

### 7. Relief On Trade-Secret Counts

Dismiss CUTSA/DTSA claims with prejudice due to Plaintiff's failure to establish secrecy, value, or misappropriation; alternatively, require a § 2019.210 statement and stay discovery; and dismiss as preempted all conversion, UCL, and interference claims that are coextensive with the alleged list.

## V. ALTERNATIVE RELIEF UNDER RULES 12(e) AND 12(f)

If any portion survives dismissal, the Court should: (i) order a more definite statement that specifically identifies the precise words, speakers, dates, audiences, and falsity theory for the defamation claim and the specific 'use in commerce' for the § 1125(a)

claim; and (ii) strike both (a) UCL damages and (b) all other remedies that are unavailable as a matter of law.

## VI.   CONCLUSION

For the reasons stated above, the complaint is a meritless attempt to chill constitutionally protected speech and to leverage trademark and trade-secret labels without supporting facts. The Court should: (1) dismiss the Defamation claim and Interference claim (as numbered in the Complaint); (2) dismiss the speech-based portion of the UCL claim; (3) dismiss the speech-only theory under § 1125(a); (4) dismiss all trademark-based injunctive/declaratory relief as moot since Defendants, including Ms. Castle, abandoned the "KNOCK LA" application in December 2024 and unconditionally disavow any present or future use or registration rights (Rule 12(b)(1)); (5) dismiss CUTSA/DTSA for lack of reasonable secrecy measures, value, and misappropriation, and dismiss as preempted any conversion/UCL/interference theory coextensive with the claims; and (6) alternatively, order a more definite statement under Rule 12(e) and strike unavailable remedies under Rule 12(f).