**ARS COUNSEL, P.C.**
Almuhtada Smith (Cal. Bar No. 263762)
asmith@arscounsel.com
515 S. Flower St., 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565
Attorney for Defendant Cerise Castle

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GROUND GAME LA, a California nonprofit corporation<br><br>Plaintiff,<br><br>v.<br><br>CERISE CASTLE, an individual; BENJAMIN CAMACHO, an individual; KATJA SCHATTE, an individual; MORGAN KEITH, an individual; KNOCK LA, a California nonprofit corporation,<br><br>Defendants. | Case No. 2:25-cv-03852-MRA-JPR<br><br>**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Cal. Code Civ. Proc. § 425.16; Fed. R. Civ. P. 12(b)(6)]<br><br>[Filed concurrently with (1) Memorandum of Points & Authorities; (2) Declaration of Cerise Castle (3) Declaration of Karl Mill; (4) Request for Judicial Notice and (5) [Proposed] Order]<br><br>Judge: Hon. Mónica Ramírez Almadani |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2025 at 1:30p.m.—or as soon thereafter as this matter may be heard— in Courtroom 9B of the United States District Court for the Central District of California, located at the Ronald Reagan Building & U.S. Courthouse, 411 W. Fourth Street, Santa Ana, CA 92701, Defendant Cerise Castle will and hereby does move the Court for an order (i) striking the Second Cause of Action for False Designation of Origin and Unfair Competition, the Eighth Cause of Action for Defamation, the Seventh Cause of Action for Intentional Interference with Prospective Economic Advantage, and the speech-based portions of the Fifth Cause of Action for Unfair Competition asserted in the Complaint ("Complaint"), pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, and (ii) awarding mandatory attorneys' fees and costs; or, in the alternative, (iii) dismissing those same claims under Fed. R. Civ. P. 12(b)(6).

This Motion is based on the accompanying Memorandum, all pleadings and records on file, such matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at the hearing.

Pursuant to Local Rule 7-3, counsel met and conferred on August 21, 2025, but were unable to resolve the issues raised herein.

DATED: August 29, 2025            ARS COUNSEL, P.C.

                                      By:    /s/Almuhtada Smith
                                                  Almuhtada Smith
                                                  Attorneys for Defendant Cerise Castle

# TABLE OF CONTENTS

Page

I. INTRODUCTION................................................................................................1

II. FACTUAL BACKGROUND...............................................................................2

III. LEGAL STANDARD...........................................................................................3

   A. Legal Standard For Dismissal Under California's Anti-SLAPP Statute.....................................................................................3

   B. Legal Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6).......................4

IV. ARGUMENT........................................................................................................5

   A. Prong One – The Challenged Claims Arise From Protected Speech (§ 425.16(e)(4)) ................................................................4

      1. Castle's Statements Were Made In A Place Open To The Public And In A Public Forum...............................................5

      2. Castle's Statements Were Made Regarding An Issue Of Public Interest.............................................................................6

      3. Castle's Conduct Was In Furtherance Of The Exercise Of Her Constitutional Right of Free Speech In Connection With A Public Issue..............................8

   B. Prong Two – Plaintiff Cannot Demonstrate a Probability of Prevailing...................................................................................................8

      1. False Designation of Origin and Unfair Competition (Count 2)....................................................................................8

      2. Defamation (Count 8)..............................................................................10

      3. Interference (Count 9)..............................................................................11

      4. UCL (Count 5 – Speech-Based Portion).................................................11

   C. Rule 12(b)(6) Alternative Grounds...............................................................12

   D. Mandatory Fees.............................................................................................12

V. CONCLUSION...................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**                                                               **Page(s)**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
    525 F. Supp. 3d. 1088 (N.D. Cal. 2021)..................................................................4

*Ampex Corp. v. Cargle*,
    128 Cal. App. 4th 1569 (2005) ............................................................................10

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021)................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4

*Balla v. Hall*,
    59 Cal. App. 5th 652 (2021)...................................................................................5

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006).............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005)...................................................................................9

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999).................................................................................9

*Cross v. Facebook*,
    14 Cal. App. 5th 190 (2017)...................................................................................5

*Della Penna v. Toyota Motor Sales, U.S.A. Inc.*,
    11 Cal. 4th 376 (1995)..........................................................................................11

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011).................................................................................12

*FilmOn.com Inc. v. DoubleVerify Inc.*,

iv

SPECIAL MOTION TO STRIKE AND TO DISMISS – 2:25-cv-03852-MRA-JPR

    7 Cal. 5th 133 (2019)..................................................................................................6

*Hecimovich v. Encinal Sch. Parent Tchr. Org.*,
    203 Cal. App. 4th 450 (2012)..................................................................................6

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018)................................................................................11

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010)...........................................................................3-4;9-10

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (2017)...................................................................................5

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017)..................................................................................4

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010)....................................................................................3

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................................................10

*Penrose Hill Ltd. v. Mabray*,
    479 F. Supp. 3d 840 (N.D. Cal. 2020)......................................................................5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828,
    897 F.3d 1224 (9th Cir. 2018)..................................................................................4

*Rand Resources, LLC v. City of Carson*,
    6 Cal. 5th 610 (2019)..............................................................................................11

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017)..................................................................11

*Rivera v. First DataBank, Inc.*,
    187 Cal. App. 4th 709 (2010)...................................................................................7

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999)...................................................................................10

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
  190 F.3d 963 (9th Cir. 1999)..................................................................................4

*Weinberg v. Feisel,*
  110 Cal. App. 4th 1122 (2013)................................................................................5

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004)..................................................................................7

*Wilson v. Cable News Network, Inc.*,
  7 Cal. 5th 871 (2019)..............................................................................................4

*Wong v. Jing,*
  189 Cal. App. 4th 1354 (2010)................................................................................5

**Statutes**

Cal. Code Civ. Proc. § 425.16.......................................................................................*passim*

Cal. Bus. & Prof. Code § 17200...........................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 4, 12

vi

SPECIAL MOTION TO STRIKE AND TO DISMISS – 2:25-cv-03852-MRA-JPR

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is a classic retaliatory SLAPP. Within forty-eight hours of being served with Ms. Castle's federal copyright suit, Plaintiff Ground Game LA ("GGLA") sued to punish her for public commentary about a matter of undeniable public concern. Ms. Castle's challenged speech—public posts on X and Instagram, emails, and podcast remarks—criticized a politically active nonprofit's governance, the treatment of contributors, and donor transparency. (Castle Decl. ¶¶ 2–6 & Exs. A, B, D–F.)

The claims are meritless. Ms. Castle never used "KNOCK LA" in commerce to sell goods or services and did not advertise; her posts conveyed truthful facts or protected opinion. She resigned from the Knock LA nonprofit in 2024 and has no present or future intent to use or register the mark; any prior USPTO application was abandoned in December 2024. (Castle Decl. ¶¶ 5–7.) The Court should strike the speech-based claims under CCP § 425.16 and award mandatory fees; alternatively, dismiss under Rule 12(b)(6).

GGLA's effort to repackage this public criticism as tortious conduct is legally baseless. The speech occurred in public forums, concerned issues that affect the broader community, and was made in furtherance of Castle's right to free expression under the First Amendment and the California Constitution. The claims fail as a matter of law: the false designation claim fails to identify a commercial use of a valid trademark that will likely confuse consumers, the defamation claim identifies no actionable falsehood or actual malice, the interference claim alleges no independently wrongful act, and the UCL claim is derivative of the others.

This Court should strike these claims under Code of Civil Procedure § 425.16 and award Castle her mandatory attorneys' fees. In the alternative, the claims should be dismissed with prejudice under Rule 12(b)(6).

## II. STATEMENT OF FACTS

Cerise Castle ("Castle") is an award-winning investigative journalist and podcaster whose reporting centers on police violence, political activism, and nonprofit governance in Los Angeles. She created, produced, and hosted "A Tradition of Violence," a 15-part investigative series on LASD deputy gangs widely cited on GGLA's website and in Los Angeles County Civil Grand Jury materials, and her work has earned the 2023 American Mosaic Journalism Prize, four 2024 California Journalism Awards, the 2022 IWMF Courage Award, and multiple Los Angeles Press Club awards, with features in outlets including ABC, the Los Angeles Times, Los Angeles Magazine, MTV, NPR, Salon, and Vanity Fair.

Between April and June 2024, Castle used email, social-media platforms, and podcast commentary to address matters of public concern involving GGLA— including (i) lockouts of journalists from accounts used for journalism, (ii) unpaid contributor stipends (including to Castle and other contributors), and (iii) opaque governance inconsistent with GGLA's public image as a progressive advocacy organization. She spoke through public-facing accounts—X (formerly Twitter) @cerisecastle, Instagram @yourmajestcee, Bluesky @cerisecastle, TikTok @yourmajestcee, and cerisecastle.me—and authored the posts attached as Exs. A, B, D, E, and F, each captured with visible URL/handle/date stamps. (Castle Decl. ¶¶ 2–4 & Exs. A, B, D–F.) Her speech was noncommercial: the posts were not advertisements and she did not sell goods or services. Her statements were true to the best of her knowledge or opinion based on disclosed facts and experience; she did not publish with knowledge of falsity or reckless disregard. (Castle Decl. ¶¶ 5–6.)

In 2024, Castle resigned from the Knock LA nonprofit and has not participated in its operations during wind-up. The Knock LA entity commenced dissolution in December 2024 and remains in wind-up pending Attorney General review; on December 17, 2024, counsel submitted a no-assets dissolution request to the AG's Dissolution Program with

a Certificate of Dissolution to be filed upon confirmation. (Mill Decl. ¶ 2 & Ex. A.) There is no active trademark application by Defendants: any prior USPTO filing for KNOCK LA was affirmatively abandoned in December 2024. (RJN Ex. 5 [USPTO Abandonment Notice].)

On April 30, 2025—one day after Castle filed a copyright-infringement complaint—GGLA filed this action. Its complaint targets the speech described above, asserting defamation (Eighth Cause of Action), intentional interference with prospective economic advantage (Seventh Cause of Action), and unfair competition (Fifth Cause of Action, in part). The suit functions as a punitive strike aimed at silencing protected criticism and chilling Castle's participation in ongoing public debate over the transparency and accountability of progressive political organizations; indeed, since GGLA filed this action, Castle and other defendants have curtailed public commentary despite the clear public interest in these issues.

### III.  LEGAL STANDARD

#### A. Legal Standard For Dismissal Under California's Anti-SLAPP Statute

California enacted its "broad" anti-SLAPP law to quickly dispose of meritless claims that target free speech. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). Under CCP § 425.16(b)(1), any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute explicitly protects written and oral statements "made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." CCP § 425.16(e).

In considering an anti-SLAPP motion, courts conduct a two-step process. *Hilton v.*

*Hallmark Cards*, 599 F.3d 894, 905–06 (9th Cir. 2010). Initially, the court considers whether the defendant has met its burden to establish that the lawsuit "aris[es] from" communications or conduct that is "protected" as specifically defined in subdivision (e) of the statute. CCP § 425.16(e), *Wilson v. Cable News Network, Inc.*, 7 Cal 5th 871, 884 (2019). "If the moving party meets its threshold showing, then the burden shifts to the non-moving party to prove a probability of prevailing on the claim." *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d. 1088, 1093 (N.D. Cal. 2021). When, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 890 F.3d 828, 834, *amended by* 897 F.3d 1224 (9th Cir. 2018). Federal courts apply § 425.16 in diversity and supplemental-jurisdiction cases. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 972 (9th Cir. 1999).

### B. Legal Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order for a claim to be "facially plausible," a plaintiff must allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In doing so, the Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court does not credit allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

### IV. ARGUMENT

**A. Prong One – The Challenged Claims Arise From Protected Speech (§ 425.16(e)(4))**

Defendant meets her burden to show that the anti-SLAPP statutes apply, as Plaintiff's false designation, defamation, interference, and UCL (speech-based portions) are based solely on Castle's social media posts and podcasts discussing donor transparency and labor practices inside a political-advocacy nonprofit, which are textbook matters of public interest. *Cross v. Facebook*, 14 Cal. App. 5th 190, 203 (2017).

### 1. Castle's Statements Were Made In A Place Open To The Public And In A Public Forum

The anti-SLAPP statute protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). As the Court of Appeal explained, "A public forum is a place open to the use of the general public for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1130 (2003).

Websites and social media platforms open to public view qualify as public forums under § 425.16. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) (endorsing the view that "Web sites accessible to the public ... are 'public forums' for purposes of the anti-SLAPP statute"); *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 854 (N.D. Cal. 2020); *Balla v. Hall*, 59 Cal. App. 5th 652, 673 (2021) (Facebook post made in a public forum); *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017) (posts on Facebook and Instagram qualified as public forum statements); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1367 (2010).

Here, Castle's challenged statements were made through public-facing social media platforms, including Twitter (now X) and Instagram. Compl. p. 15–16 ¶ 64–67. These posts generated substantial public engagement and discussion, with numerous members of the public expressing support and sharing their own related concerns. Because these platforms are accessible to the general public and used to discuss matters of broad interest, Castle's statements fall squarely within the scope of § 425.16(e)(3).

## 2. Castle's Statements Were Made Regarding An Issue Of Public Interest

Whether speech concerns a matter of "public interest" must be "construed broadly" under California's anti-SLAPP statute. *Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 464–65 (2012). An issue qualifies as one of public interest if it is "any issue in which the public is interested." *Id*. This includes not only governmental matters, but also controversies involving nonprofit entities, labor rights, and public-facing brands.

To determine whether speech concerns an issue of public interest, courts consider factors such as: (1) whether the subject of the speech is a person or entity in the public eye; (2) whether the speech could affect a large number of people beyond the immediate parties; (3) whether it arises in the context of an ongoing public controversy or discussion and; (4) whether it affects a community in a way similar to governmental activity. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145–46 (2019). Critically, even disputes between private actors may fall within the public interest prong where the "focus of the speaker's conduct" is to inform or engage the public. *Hecimovich*, 203 Cal. App. 4th at 465.

Here, statements made on the Knock LA website and social media addressed matters of widespread concern, including the treatment of independent journalists and contributors by a political nonprofit, allegations that GGLA failed to pay stipends to laborers it solicited, the exclusion of press from community events, and the ongoing dispute over branding and control of Knock LA, a media platform recognized for investigative reporting on law enforcement, homelessness, and local politics. Knock LA is particularly recognized for Castle's "A Tradition of Violence" series. This investigative series has become a cornerstone of public discourse on law enforcement accountability. This is further supported by Castle's open letter addressing the issue of GGLA suppressing the free press and GGLA's affiliation with venture capital firms and billionaires. *See* Ex. B.

6
SPECIAL MOTION TO STRIKE AND TO DISMISS – 2:25-cv-03852-MRA-JPR

These statements did not merely concern internal workplace grievances. They raised systemic issues that directly impact donors, supporters, contributors, readers, and the broader political community. GGLA's operations are inherently matters of public concern given its "co-governance" model with elected officials and direct ties to local government. Its Executive Director, Meghan Choi, previously served as chief of staff to an elected city council member, further cementing the organization's public character. GGLA presents itself as a political advocacy organization, solicits donations, and actively shapes civic discourse through its close relationships with public officials, placing it squarely in the public eye. See RJN Ex. 1, Larchmont Buzz article; RJN Ex. 2, Social media posts documenting GGLA's political relationships.

Additionally, the story of Castle's work and her affiliation with Knock LA was picked up by several news outlets. These outlets published articles and interviews covering Castle's work. *See* Ex. E. Castle's commentary contributed to a broader public conversation about the transparency and accountability of such organizations.

Courts have repeatedly held that criticism of public-facing nonprofits qualifies as speech on a matter of public interest. In *Wilbanks,* the court found that consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest. *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). Likewise, *Rivera* confirmed that speech involves a public issue when it is "of concern to a substantial number of people." *Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 716 (2010).

Because Castle's speech contributed to a broader public discussion regarding a prominent advocacy organization's ethics and treatment of workers and journalists, it easily falls within the protections of Code of Civil Procedure § 425.16(e)(4).

### 3. Castle's Conduct Was In Furtherance Of The Exercise Of Her Constitutional Right of Free Speech In Connection With A Public Issue

Castle's statements are independently protected under California Code of Civil Procedure § 425.16(e)(4), which safeguards "any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." This provision extends anti-SLAPP protection beyond just formal speech to include related expressive activity that promotes public dialogue.

Here, Castle's statements constitute precisely the type of public-facing, expressive conduct contemplated by § 425.16(e)(4). As explained above, her statements addressed the governance, financial transparency, and labor practices of a political nonprofit that operates extensively in the public sphere through its "co-governance" model with elected officials and direct governmental ties. GGLA's Executive Director, Meghan Choi, previously served as chief of staff to an elected city council member, and the organization actively shapes civic discourse through its close relationships with public officials, effectively blurring the lines between private advocacy and governmental influence. Castle's commentary contributed to an ongoing public debate about how politically-connected advocacy organizations treat contributors, control editorial platforms, and exercise their substantial influence over public policy—issues that directly impact not only the immediate parties but the broader community's understanding of how power operates at the intersection of nonprofit advocacy and local government.

Accordingly, Castle's conduct falls squarely within the protection of § 425.16(e)(4), as it was undertaken in furtherance of her constitutional right to free speech on issues of public concern.

### B. Prong Two – Plaintiff Cannot Demonstrate a Probability of Prevailing

#### 1. False Designation of Origin and Unfair Competition (Count 2)

Even if § 1125(a) were considered at Step 2 (or otherwise), Plaintiff cannot make

a prima facie case. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–16 (9th Cir. 2021). To prevail, GGLA must prove: (1) a valid, protectable interest; (2) Defendants' use of the mark "in commerce"; (3) in connection with goods or services; and (4) a likelihood of consumer confusion. See *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046-47 (9th Cir. 1999). Assuming for this motion that element (1) is satisfied, elements (2)–(4) fail as a matter of law.

First, there is no "use in commerce." Plaintiff's theory rests on acts that are not actionable trademark use: the filing of a USPTO application later abandoned, the formation of a nonprofit, and a short-lived website at knockla.org. Filing an application—especially one that Defendants, including Ms. Castle, affirmatively abandoned in December 2024—does not place a mark in commerce or create confusion. Corporate formation, standing alone, is not trademark use. And Plaintiff pleads no facts that any website actually branded, advertised, or sold goods or services under KNOCK LA. Noncommercial, editorial, and advocacy communications fall outside the Lanham Act. See *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676–79 (9th Cir. 2005) (no Lanham liability where defendant is not offering goods or services under the mark); see also Ariix, 985 F.3d at 1115–19 (distinguishing commercial from protected editorial speech).

Second, there is no showing the challenged references occurred "in connection with goods or services." The complaint identifies no product, service, solicitation, campaign, or transaction in which Ms. Castle used KNOCK LA as a source identifier. Allegations about entity formation and an abandoned application do not satisfy § 1125(a)'s commercial-use requirement.

Third, Plaintiff offers no evidence of likely confusion. Bare conclusions that consumers were or would be confused because a nonprofit was formed or an application once existed are not enough. Without commercial use, there can be no confusion analysis to begin with. See *Bosley*, 403 F.3d at 678–79. To the extent Plaintiff points to commentary about authorship/governance, those are expressive references, not source-

identifying uses, and cannot ground a confusion claim. See *Hilton v. Hallmark Cards*, 599 F.3d 894, 904–05 (9th Cir. 2010).

Finally, prospective relief is independently moot: Defendants abandoned any prior application in December 2024 and have unconditionally disavowed any present or future use or registration of KNOCK LA. See *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–94 (2013). Separately—and not to be conflated with the USPTO record—the Knock LA nonprofit commenced dissolution in December 2024 and remains in wind-up pending California Attorney General confirmation. (Mill Decl. ¶¶ #3 & Ex. A; Castle Decl. ¶¶ 2)

Because Plaintiff cannot establish commercial use or likely confusion—and because any forward-looking relief is moot—the § 1125(a) claim cannot succeed and should be stricken (to the extent the Court applies anti-SLAPP to this claim) or rejected on the merits at Step 2.

## 2. Defamation (Count 8)

Plaintiff's defamation claim is both legally and factually deficient.

First, the complaint fails to identify any specific false and defamatory statement with the requisite detail. General references to Castle's "tweets" and "emails" are insufficient. A defamation claim must allege the precise words or substance of the allegedly false statement, the context in which it was made, and facts showing that it was false and unprivileged. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645–46 (1999).

Second, Plaintiff fails to plead falsity or actual malice, both of which are required. Because Ground Game LA is a prominent political nonprofit involved in public advocacy, it qualifies as a limited-purpose public figure for purposes of this controversy. *See Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578–79 (2005) (advocacy groups may be public figures in contexts where they seek public attention). Thus, Plaintiff must plead and ultimately prove that Castle's statements were both false and made with actual malice, that is, "knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

The complaint alleges neither. Instead, it offers vague generalities and conclusions without identifying what exactly was false or malicious. This is not sufficient to survive even ordinary scrutiny, let alone under the anti-SLAPP standard. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018–19 (N.D. Cal. 2017) (dismissing defamation claims arising from activist speech absent actual malice.)

### 3. Interference (Count 9)

Plaintiff's intentional interference claim cannot survive prong two because it is based solely on Castle's protected speech and fails to allege any independently wrongful act. To prevail on a claim for intentional interference with prospective economic advantage, Plaintiff must show, among other elements, that Defendant's "interference was wrongful 'by some measure beyond the fact of the interference itself'". *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 11 Cal. 4th 376, 392–93 (1995).

The California Supreme Court has confirmed that the "independently wrongful" requirement is substantive and cannot be satisfied by protected petitioning or speech activities alone. *Rand Resources, LLC v. City of Carson*, 6 Cal. 5th 610, 630 (2019).

Because GGLA alleges only that Castle's speech (her social media commentary and related communications) caused third parties not to do business with it, and because that speech is protected, the claim fails as a matter of law. Absent allegations of conduct that is unlawful apart from the speech itself, Plaintiff cannot meet its burden under prong two.

### 4. UCL (Count 5 – Speech-Based Portions)

Plaintiff's UCL claim under California Business and Professions Code § 17200 is entirely derivative of its false designation, defamation, and interference counts. A UCL claim cannot survive where its predicate claims fail. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018).

Here, Plaintiff's UCL allegations merely attempt to reframe its failed defamation and interference claims without demonstrating any independent unlawful, unfair, or

fraudulent conduct. The speech at issue concerns legitimate reporting and commentary on matters of public discourse. Because the predicate claims lack merit and the speech is constitutionally protected expression regarding matters of public concern, Plaintiff cannot demonstrate any probability of prevailing on Count 5.

### C. Rule 12(b)(6) Alternative Grounds

For the same reasons that Plaintiff cannot establish a probability of prevailing under the anti-SLAPP statute, it likewise fails to plausibly state a claim for relief under Rule 12(b)(6). Even if the Court declines to strike under § 425.16, Counts 2, 5 (speech-based portions), 8, and 9 should be dismissed for failure to state a claim.

As explained above, the defects in Counts 2, 5 (speech-based portions), 8, and 9 are substantive and cannot be cured by amendment. Because amendment would be futile, dismissal should be without leave to amend. *See Dougherty v. City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011) (dismissal without leave proper where amendment would be futile).

### D. Mandatory Fees

Because Castle succeeds on her anti-SLAPP motion, fees and costs are mandatory. Cal. Code Civ. Proc. § 425.16(c)(1).

### V. CONCLUSION

For all the reasons set forth above, the Court should strike Counts 2, 5 (speech-based portions), 7, and 8 pursuant to the anti-SLAPP statute, and award Defendant Cerise Castle her attorney fees and costs, in a motion to be filed later. Alternatively, the Court should dismiss the Complaint with prejudice.

**Certificate of Compliance (L.R. 11-6.2):**

The undersigned certifies that this memorandum contains 4,664 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 29, 2025                    ARS COUNSEL, P.C.


                                          By: /s/Almuhtada Smith
                                              Almuhtada Smith
                                              Attorneys for Defendant Cerise Castle